# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

$133,420.00 IN UNITED STATES
CURRENCY,
                *Defendant,*

            and

DAMON J. LOUIS,
            *Claimant-Appellant.*

No. 10-16727

D.C. No.
3:09-cv-08096-
NVW

OPINION

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted
October 26, 2011—San Francisco, California

Filed February 21, 2012

Before: Susan P. Graber and Sandra S. Ikuta, Circuit Judges,
and Lewis A. Kaplan,* Senior District Judge.

Opinion by Judge Ikuta

*The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

1905

## COUNSEL

David M. Michael (argued) and Edward M. Burch, Law Offices of David M. Michael, San Francisco, California, for claimant-appellant Damon J. Louis.

Reid C. Pixler, Assistant United States Attorney, Phoenix, Arizona, for plaintiff-appellee United States of America.

## OPINION

IKUTA, Circuit Judge:

This appeal arises in the context of a civil forfeiture action instituted by the government after it seized $133,420 found in Damon Louis's car. Louis asserts that the district court erred in granting summary judgment to the government after determining that Louis lacked standing. Because the district court did not err in striking Louis's interrogatory response claiming ownership of the property, and because the remaining evidence was inadequate to establish that Louis had standing, we affirm.

## I

This appeal arises in the context of a civil forfeiture action. Such actions are governed by statute, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure. We begin by briefly describing the applicable statutory and procedural provisions.

Under 21 U.S.C. § 881(a), certain property is "subject to forfeiture to the United States." Relevant here, § 881(a)(6) provides that "moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance" and "all proceeds traceable to such an exchange" are subject to forfeiture. Once such property has been seized, it is "deemed to be in the custody of the Attorney General." 21 U.S.C. § 881(c). The Attorney General may then seek either criminal forfeiture, *see* 18 U.S.C. § 982, or (as in this case) civil forfeiture, *see id.* § 983.

The government begins a judicial civil forfeiture action by filing an in rem complaint against the property (sometimes referred to as the "defendant property") in the appropriate district court. *Id.* § 983(a)(3)(A); *see also* 28 U.S.C. § 1395. The complaint must be verified, state the grounds for jurisdiction, describe the property and its location, identify the statute under which forfeiture is sought, and state facts sufficient to "support a reasonable belief that the government will be able to meet its burden at trial." Supp. R. G(2)(f); *see also* 18 U.S.C. § 983(a)(3)(A).

Any person wishing to intervene and assert an interest in the property must file two responsive pleadings: a verified claim and an answer. 18 U.S.C. § 983(a)(4)(A), (B); Supp. R. G(5). The verified claim must (1) "identify the specific property claimed," (2) "identify the claimant and state the claimant's interest in the property," (3) "be signed by the claimant under penalty of perjury," and (4) be served on the government's attorney. Supp. R. G(5)(a)(i). In the answer, the claimant may admit or deny the allegations in the complaint and set forth defenses.

Unlike in typical civil proceedings, the government may commence limited discovery immediately after a verified claim is filed. Supplemental Rule G(6)(a) provides that "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property

without the court's leave at any time after the claim is filed and before discovery is closed."[1] The purpose of the rule is "to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing." Supp. R. G advisory committee's note (subdivision (6)). The claimant must respond to these special interrogatories within 21 days. Supp. R. G(6)(b). The general civil discovery rules of the Federal Rules of Civil Procedure otherwise apply. Supp. R. G(1).

At any time before trial, the government may move to strike the claimant's claim or answer on the grounds that the claim or answer does not comply with Supplemental Rule G(5), that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a), or that the claimant lacks standing. Supp. R. G(8)(c).[2] The motion to strike

---

[1]Supplemental Rule G(6)(a) states, in full:

Time and Scope. The government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed. But if the claimant serves a motion to dismiss the action, the government must serve the interrogatories within 21 days after the motion is served.

[2]Supplemental Rule G(8)(c) provides:

Motion To Strike a Claim or Answer.

(i) At any time before trial, the government may move to strike a claim or answer:

(A) for failing to comply with Rule G(5) or (6), or

(B) because the claimant lacks standing.

(ii) The motion:

(A) must be decided before any motion by the claimant to dismiss the action; and

(B) may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence.

may be presented as a motion for summary judgment. Supp. R. G(8)(c)(ii)(B). The court must decide the motion to strike before reaching a claimant's motion to dismiss. Supp. R. G(8)(c)(ii)(A).

If the case proceeds to trial, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1).

**II**

We now turn to the facts of this case. On January 6, 2009, Arizona Department of Public Safety Officer Mace Craft stopped Louis on Interstate 40 for failure to use his turn signal. In response to questioning, Louis told Officer Craft that he was driving back to San Francisco from Albuquerque after attending a friend's wedding. He also stated that there was nothing illegal in the vehicle and twice denied that there was a large amount of currency in the vehicle.

Officer Craft led his canine, who was trained to alert to the scent of various illegal drugs, around the vehicle. The dog alerted, and Officer Craft told Louis that he had probable cause to search the vehicle. In the search that followed, Officer Craft found three cardboard boxes in Louis's trunk. Two of those boxes contained decorative rocks. The third contained a set of black throwing daggers and $133,420 in United States currency. No other contraband was found. Officer Craft seized the money, which he suspected was the proceeds of illegal drug trafficking, and transported Louis to the Flagstaff police station. At the station, Louis told the officers that he knew the currency was in the trunk of his car, but he gave no clear answer when asked whether the money was his. He refused to sign a form disclaiming ownership of the currency. The officers released Louis and returned his vehicle.

On June 5, 2009, the government began a civil forfeiture action by filing a complaint in district court that sought forfei-

ture of the currency seized from Louis's car as proceeds traceable to controlled substances offenses under 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6). Louis filed a verified claim on August 12, 2009, which read, in full: "The undersigned hereby claims an ownership and/or a possessory interest in, and the right to exercise dominion and control over, all or part of the defendant property."

In response, the government served seven interrogatories, a request for production of documents, and twelve requests for admissions on Louis under Supplemental Rule G(6)(a). The discovery requests sought information and documents relating to Louis's identity, his claimed interest in the defendant property, his manner of acquiring that interest, his sources of income, and his and the currency's relationship to drug trafficking. Interrogatory No. 2 read:

> State the extent and describe with particularity the nature of your interest in the defendant currency, and identify how you acquired that interest. Your answer should include, but not be limited to, the following:
>
> (a) The date(s), time, place and manner in which the defendant currency[ ] was obtained, including the names, address and telephone numbers of the person(s) from whom the currency was obtained.
>
> (b) the circumstances of each transaction by which you acquired or obtained any interest in the defendant currency.
>
> (c) the reason(s) the defendant currency was obtained, and witnesses, including the names, addresses, and telephone numbers of such witnesses, to any of the transactions by which the defendant currency was obtained.
>
> (d) produce each and every document evidencing, recording, facilitating, or otherwise relating to any

transaction identified in response to Interrogatory No. 2 (a) through (c) above.

Louis responded to the discovery requests on December 9, 2009. He objected to Interrogatory No. 2, as well as every other discovery request, on three grounds: (1) the discovery request exceeded the scope of Supplemental Rule G(6)(a), (2) the discovery request sought information in violation of his Fourth Amendment right against unreasonable search and seizure, and (3) the discovery request sought information in violation of his Fifth Amendment privilege against self-incrimination. Louis did provide a limited response to Interrogatory 2: "Without waiving said objections, my interest in the defendant property is as the owner and possessor of said property, with a right to exercise dominion and control over said property."

The government filed a motion to strike Louis's claim and answer on the theory that Louis lacked Article III standing to contest the forfeiture. After filing this motion to strike, the government made several efforts to obtain additional discovery information from Louis, including filing an emergency motion to compel discovery. Louis refused to provide any further information, even after the court granted the motion to compel. The government then filed a motion to strike Louis's December 2009 discovery responses. The district court granted that motion, holding that Louis had impermissibly used the privilege as both a shield and a sword in that he had used the interrogatory responses to claim an ownership interest in the property (which benefited his cause) but refused to respond to "follow-up questions about the details of that ownership interest, including how, why, or where he obtained the funds."

After striking Louis's discovery response, the court determined that the only evidence remaining in the record supporting Louis's standing was Louis's physical possession of the currency when it was seized. The unexplained fact of posses-

sion, the district court held, was insufficient to establish Article III standing at any stage of a forfeiture proceeding. Treating the government's motion to strike Louis's claim and answer as a motion for summary judgment pursuant to Supplemental Rule G(8)(c), the district court struck Louis's verified claim and answer and subsequently denied Louis's motion for reconsideration.

On appeal, Louis argues that the district court erred in striking his discovery responses and that, even with those responses stricken, his verified claim was sufficient to withstand the government's motion for summary judgment based on his lack of Article III standing.

### III

We have jurisdiction over this case pursuant to 28 U.S.C. § 1291. We review summary judgment orders de novo. *Papike v. Tambrands Inc.*, 107 F.3d 737, 739 (9th Cir. 1997). "In reviewing the court's order we must view the evidence in the light most favorable to [the non-moving party] and determine whether there are any genuine issues of material fact and whether the court correctly applied the relevant substantive law." *Id.* We review the district court's rulings on motions to strike for abuse of discretion, *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003), and its interpretations of the Federal Rules of Civil Procedure de novo, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

**[1]** In order to meet the case-or-controversy requirement of Article III, a plaintiff (including a civil forfeiture claimant) must establish the three elements of standing, namely, that the plaintiff suffered an injury in fact, that there is a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004). Claimants in civil

forfeiture actions can satisfy this test by showing that they have "a colorable interest in the property," *5208 Los Franciscos Way*, 385 F.3d at 1191, which includes an ownership interest or a possessory interest, *United States v. $191,910.00*, 16 F.3d 1051, 1057 (9th Cir. 1994), *superseded by statute on another ground as stated in United States v. $80,180.00*, 303 F.3d 1182, 1184 (9th Cir. 2002). "Article III's standing requirement is thereby satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998).

The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. This rule applies equally in civil forfeiture proceedings. *See United States v. $148,840.00*, 521 F.3d 1268, 1273 (10th Cir. 2008) (contrasting the requirements to establish standing at the motion to dismiss and summary judgment stages of civil forfeiture proceedings).

We have previously delineated the burdens on a claimant at the motion to dismiss and trial stages of a civil forfeiture action. At the motion to dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is sufficient by itself to establish standing. *United States v. 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008); *$191,910.00*, 16 F.3d at 1058. If the claimant instead asserts a possessory interest at the motion to dismiss stage, the claimant must offer some "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *$515,060.42*, 152 F.3d at 498. "Mere *unexplained possession* will not be sufficient." *$191,910.00*, 16 F.3d at 1058 (emphasis in original). At trial, "[t]he claimant has the burden of establishing,

by a preponderance of the evidence, that he has an interest in the property." *United States v. Section 18*, 976 F.2d 515, 520 (9th Cir. 1992).

**[2]** Although we have not yet expressly identified the burden on a claimant at the summary judgment stage of a civil forfeiture action, several general principles apply. As stated in *Lujan*, to withstand a motion for summary judgment on the ground that the plaintiff lacks standing, a plaintiff cannot rely on mere allegations but rather must " 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." 504 U.S. at 561 (citation omitted) (quoting Fed. R. Civ. P. 56(e)). At the summary judgment stage, the district court must ask itself whether "a fair-minded jury" could find that the claimant had standing on the evidence presented. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *United States v. $42,500.00*, 283 F.3d 977, 983 (9th Cir. 2002) "The mere existence of a scintilla of evidence in support of the plaintiff 's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**[3]** Applying these principles, we conclude that, in a civil forfeiture action, a claimant's bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment. As we have explained, "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact," *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *cf. United States v. Bright*, 596 F.3d 683, 695 (9th Cir. 2010); *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) (stating that summary judgment is inappropriate where the plaintiff set forth facts directly relevant to claim with "great specificity"). A claimant asserting an ownership interest in the defendant property, therefore, must also present "some evidence of ownership" beyond the mere assertion in

order to survive a motion for summary judgment. *United States v. $81,000.00*, 189 F.3d 28, 35 (1st Cir. 1999); *see also United States v. $38,570*, 950 F.2d 1108, 1112-13 (5th Cir. 1992). The fact that property was seized from the claimant's possession, for example, may be sufficient evidence, when coupled with a claim of ownership, to establish standing at the summary judgment stage. *See $148,840.00*, 521 F.3d at 1277 ("[B]ecause [claimant's] assertion of ownership is assumed to be true on this record, and because the currency was indisputably seized from a vehicle that [claimant] was driving, we hold that [claimant] has established constitutional standing at this stage of the litigation.").

**[4]** Similarly, a claimant asserting a possessory interest must provide some "evidence supporting his assertion that he has a lawful possessory interest in the money seized" to survive a summary judgment motion. *United States v. $321,470.00*, 874 F.2d 298, 303 (5th Cir. 1989). "Unexplained naked possession of a cash hoard . . . does not rise to the level of the possessory interest requisite for standing to attack the forfeiture proceeding" at the summary judgment stage. *$42,500.00*, 283 F.3d at 983 (quoting *$321,470.00*, 874 F.2d at 304).

## IV

We apply these principles to determine whether Louis has met his burden of providing evidence of an ownership or possessory interest in the cash at issue that is sufficient to withstand the government's summary judgment motion. Louis relies on two pieces of evidence in addition to the undisputed fact that the currency was seized from his possession: his verified claim and his response to Interrogatory No. 2. We must determine whether these two pieces of evidence were properly before the district court and whether the evidence before the court is sufficient to carry Louis's burden.

A

**[5]** Louis's verified claim, filed pursuant to Supplemental Rule G(5)(a), asserted that he had an "ownership and/or a possessory interest in, and the right to exercise dominion and control over, all or part of the defendant property." The government argues that this verified claim is not evidence for purposes of the summary judgment motion.[3] We disagree. Although allegations in pleadings are generally not part of the factual record for purposes of summary judgment, *see Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 690 n.2 (9th Cir.), *cert. denied*, 131 S. Ct. 329 (2010), affidavits or declarations that are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated" are cognizable evidence for purposes of supporting or opposing a motion for summary judgment, Fed. R. Civ. P. 56(c)(4). Here, Supplemental Rule G(5)(a)(i)(C) requires claims in a civil forfeiture case to be "signed by the claimant under penalty of perjury," and Louis's claim was verified in this manner. Therefore, it constitutes evidence for purposes of opposing the government's motion for summary judgment.

**[6]** Although Louis's verified claim was admissible evidence, its statement that Louis had an "ownership and/or a possessory interest" in the defendant property is not sufficient to establish his standing. As we have explained, the claimant must make clear whether he is asserting "a possessory interest, an ownership interest, or something else." *$191,910.00*, 16 F.3d at 1057. Because Louis's claim used "and/or," it was

---

[3]At oral argument, the government raised the additional argument that the district court should not have considered Louis's verified claim because it was facially deficient under Supplemental Rule G(5). Because the government did not raise this argument to the district court, or in its brief, we will not consider it on appeal. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992).

not sufficiently specific regarding the nature of Louis's claimed interest in the property. More important, the term "and/or" left open the possibility that Louis was claiming only a possessory interest, and the evidence before the district court was inadequate to create a genuine issue of material fact regarding such an interest: Louis never offered any explanation of how he came to possess the money seized from his vehicle, and an unexplained possessory interest is insufficient to establish standing at any stage of a forfeiture proceeding. *Id.* at 1058. Because Louis did not unequivocally state he had an ownership interest in the property, and did not provide sufficient information to establish a lawful possessory interest, Louis's statement in the verified claim does not carry his burden.

B

**[7]** Louis argues that his response to Interrogatory No. 2, which stated that he had an "interest in the defendant property . . . as the owner and possessor of said property, with a right to exercise dominion and control over said property," provided evidence of his ownership interest sufficient to withstand summary judgment. Unlike Louis's verified claim, this interrogatory response included an unequivocal assertion that Louis was the owner of the defendant property. That assertion of ownership, combined with Louis's possession of the currency at the time it was seized, would be enough to establish Louis's standing for purposes of a motion for summary judgment. *See $148,840.00*, 521 F.3d at 1277. But the district court did not consider this evidence; rather, it struck Louis's response to Interrogatory No. 2, holding that it was improper to allow Louis to rely on this response to bolster his case for standing when he had invoked his Fifth Amendment privilege against self-incrimination to refuse to respond to further questioning about the nature of his alleged ownership interest.

**[8]** We have long held that a district court may strike the testimony of a witness in a criminal proceeding to avoid a

witness's improper use of the Fifth Amendment privilege against self-incrimination as a sword as well as a shield. *See United States v. Seifert*, 648 F.2d 557, 561 (9th Cir. 1980). The purpose of this rule is to protect the integrity and truth-seeking function of the judicial system from the distortions that could occur if a witness could testify and then use the Fifth Amendment privilege to prevent any adversarial testing of the truth of that testimony. *See Williams v. Borg*, 139 F.3d 737, 742 (9th Cir. 1998) (noting that a criminal defendant, like any other witness, must "comply with the procedures used to give the jury a fair chance to evaluate [the testimony's] truth"); *Denham v. Deeds*, 954 F.2d 1501, 1504 (9th Cir. 1992) ("Where a defense witness refuses to answer questions that go to the heart of the direct testimony on a central issue, . . . the truth-seeking function of the court is impaired."); *see also Lawson v. Murray*, 837 F.2d 653, 656 (4th Cir. 1988) ("Important public policy protects even the prosecution's right to fair trials and the pursuit of truth, so that a similar principle should govern whether the recalcitrant witness was offered by the prosecution or by the defendant."). By striking testimony that a party shields from cross-examination, a court can respect the witness's constitutional privilege against self-incrimination while still preventing the witness from using the privilege to " 'mutilate the truth a party offers to tell.' " *Lawson*, 837 F.2d at 656 (quoting *Brown v. United States*, 356 U.S. 148, 156 (1958)); *see also United States v. St. Pierre*, 132 F.2d 837, 840 (2d Cir. 1943) (Hand, J.) (stating that, although the exercise of the Fifth Amendment privilege against self-incrimination "deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition"); *cf. Williams v. Florida*, 399 U.S. 78, 84 (1970) ("That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."). A district court may strike such testimony "if invocation of the privilege blocks

inquiry into matters which are 'direct' and are not merely 'collateral' " to the proceeding. *Seifert*, 648 F.2d at 561.

[9] Although we have not yet considered a district court's application of this rule in a civil proceeding, we see no reason to depart from our long-standing doctrine here. As five of our sister circuits have held, the rule is equally applicable in civil proceedings. *See $148,840.00*, 521 F.3d at 1277 (10th Cir.) ("It is well established that in a civil case a district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause."); *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 84-85 (2d Cir. 1995) ("If it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial procedures or impose sanctions."); *Edmond v. Consumer Prot. Div.* (*In re Edmond*), 934 F.2d 1304, 1308 (4th Cir. 1991) ("[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion."); *United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (holding in a civil forfeiture action that "a witness' direct testimony can be stricken if she invokes the fifth amendment on cross-examination to shield that testimony from scrutiny"); *United States v. Baker*, 721 F.2d 647, 650 (8th Cir. 1983) (per curiam); *see also Lawson*, 837 F.2d at 656. Preserving the integrity and the truth-seeking function of the judicial process is as important in civil as in criminal proceedings. *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) (affirming district court's refusal to allow witness to testify on particular subject at trial when the Fifth Amendment had been used to block inquiry into that subject during a deposition).

[10] We next consider Louis's argument that the district court abused its discretion in striking his interrogatory

response.[4] In responding to Interrogatory No. 2, Louis asserted that he had an ownership interest in the cash seized from his vehicle, an assertion that was crucial for him to prove standing. Louis's standing to contest the government's civil forfeiture action was the central issue at that stage of the proceedings. The issue of standing is subject to adversarial testing under Supplemental Rule G(6)(a), which gives the government the right to question the claimant regarding the "claimant's identity and relationship to the defendant property," Supp. R. G(6)(a) and to "gather information that bears on the claimant's standing," *id.* advisory committee's note (subdivision (6)). Louis used the Fifth Amendment privilege to avoid answering further questions as to the "date(s), time, place and manner in which the defendant currency[ ] was obtained" and the "circumstances of each transaction by which [he] acquired or obtained any interest in the defendant currency," thereby frustrating the government's attempts to test the veracity of his claim of ownership. In so doing, Louis impaired the truth-seeking function of the judicial process. Indeed, his claim of privilege here raises the core concern that his testimony may "furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition." *St. Pierre*, 132 F.2d at 840. Because Louis's testimony regarding his ownership was central to the issue before the court, and because his refusal to respond to the government's questions threatened to "mutilate the truth a party offers to tell," *Lawson*, 837 F.2d at 656, the district court did not abuse its discretion by striking Louis's response to Interrogatory No. 2.

---

[4]The parties do not dispute that the rule allowing a district court to strike testimony to avoid an abuse of the Fifth Amendment privilege against self-incrimination applies equally to written testimony. *See Edmond*, 934 F.2d at 1308 ("The same principle applies when a party seeks to invoke the Fifth Amendment to avoid discovery while offering an affidavit to compel a certain result on summary judgment."); *Parcels of Land*, 903 F.2d at 43 ("What matters is whether a testimonial statement was involved.").

## C

Additionally, Louis argues that the government's interrogatories went beyond the scope of Supplemental Rule G(6)(a) and that he properly objected to them on that basis. In other words, Louis invites us to interpret Supplemental Rule G(6)(a) narrowly so that his refusal to answer various interrogatories would not constitute an impermissible use of the Fifth Amendment. According to Louis, because a claimant can establish standing merely by asserting an interest in the property, and because the advisory committee's note to Supplemental Rule G(6) limits the interrogatories to questions "bearing on a claimant's standing," it follows that Rule G(6) allows only questions regarding the identity of the claimant and the type of legal interest asserted. Therefore, Louis asserts, the rule does not allow the government to pose any questions about the circumstances in which the claimant obtained an interest in the property, and the government's interrogatories here were well beyond the scope of Rule G(6).

**[11]** We reject this argument because it is contrary to the text of Rule G(6)(a) itself, which broadly allows the government to collect information regarding the claimant's "relationship to the defendant property." Moreover, the advisory committee's note to this rule contemplates that the government may seek information beyond the claimant's identity and type of property interest, stating that when "the claimant asserts a relationship to the property as bailee, the interrogatories can inquire into the bailor's interest in the property and the bailee's relationship to the bailor." Supp. R. G advisory committee's note (subsection (6)). Furthermore, Louis's limited interpretation would make Supplemental Rule G(6)(a) superfluous because Supplemental Rule G(5)(a)(i)(B) already requires the verified claim to "identify the claimant and state the claimant's interest in the property." It is a " 'cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant.' " *Spencer Enters., Inc. v.*

*United States*, 345 F.3d 683, 691 (9th Cir. 2003) (quoting *Kungys v. United States*, 485 U.S. 759, 778 (1988)).[5]

Additionally, Louis's premise that the only information relevant to standing is the claimant's identity and interest in the defendant property is simply incorrect, as is made plain by the facts of this case. As explained above, a claimant seeking to establish standing on the basis of a possessory interest must explain the circumstances of that possession. *See $42,500.00*, 283 F.3d at 983. Here, Louis did not unequivocally claim an ownership interest in the currency until he responded to the interrogatories. Until then, Louis had left open the possibility that he was claiming only a possessory interest in the defendant property. Thus, information as to the circumstances under which the currency was obtained is information that "bears on [Louis's] standing." Supp. R. G advisory committee's note (subdivision (6)).

**[12]** Louis further argues that, rather than striking his interrogatory responses, the district court should have found a way

---

[5]We agree with Louis that many of the government's discovery requests were beyond the scope of Rule G(6)(a); for example, the government requested the production of documents and admissions when the rule permits only interrogatories, and it requested that Louis "list the sources of all other income that [he] received, whether earned or unearned, from any source(s) for the last five years" and "[e]xplain why anyone would travel anywhere with more than $133,420 in U.S. currency in a rented vehicle," when the rule allows only information as to Louis's "identity and relationship to the defendant property." Supp. R. G(6)(a). This overreaching does not, however, affect our analysis of Interrogatory No. 2, which was well within the scope of the rule. Moreover, the argument that these interrogatories exceeded the scope of Rule G(6) gives Louis little assistance here because the government served an identical set of discovery requests on Louis pursuant to the Federal Rules of Civil Procedure before the district court struck Louis's responses, and Louis would not have been entitled to refrain from answering such discovery requests because of their scope. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . .").

to protect his Fifth Amendment rights while still allowing him to maintain his claim for the property, even though Louis did not request any such accommodation. We have recognized that "courts must seek to accommodate the defendant's right against self-incrimination in a civil forfeiture proceeding." *United States v. Thirteen (13) Mach. Guns*, 689 F.2d 861, 864 (9th Cir. 1982); *see also 4003-4005 5th Ave.*, 55 F.3d at 84 (courts should "explore all possible measures in order to 'select that means which strikes a fair balance . . . and . . . accommodates both parties' ") (alterations in original) (quoting *United States v. U.S. Currency*, 626 F.2d 11, 16 (6th Cir. 1980)). But it is the claimant, and not the district court, who has the duty of seeking such accommodation in the first instance. *See 4003-4005 5th Ave.*, 55 F.3d at 84 (noting that a district court is required to consider accommodation "if there is a timely request made to the court"); *United States v. 566 Hendrickson Blvd.*, 986 F.2d 990, 996 (6th Cir. 1993) (holding that claimant's accommodation argument failed because "at no time did claimant request any such relief from the District Court"). Because Louis failed to seek such accommodation, he cannot now claim that the district court erred in failing to provide it.

**[13]** Louis's remaining arguments also fail. First, he argues that the district court's decision to strike his discovery responses was equivalent to making an adverse inference against him for failure to testify. "It is well established that in a criminal trial a judge or prosecutor may not suggest that the jury draw an adverse inference from a defendant's failure to testify," *United States v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997), and Louis argues that the bar on such adverse inferences should also apply to claimants in civil forfeiture actions, *cf. United States v. Rural Route 1, Box 137-B*, 24 F.3d 845, 851 (6th Cir. 1994) (per curiam). This argument fails. The district court did not draw an adverse inference against Louis; rather, it held that there was not sufficient evidence on the record for him to withstand summary judgment.

**[14]** Second, Louis argues that requiring him to answer questions about his relationship to the currency at an early stage of the forfeiture proceeding improperly shifts the burden of proof and requires him to "prove the merits" of his claim in order to establish Article III standing. Again, Louis is wrong. Although the burden of proving that the property is subject to forfeiture is on the government, 18 U.S.C. § 983(c), the burden of establishing standing is on the claimant, *see Lujan*, 504 U.S. at 560; *see also* Supp. R. G(8)(c)(ii)(B).

**[15]** Finally, Louis argues that the district court erred by failing to consider his Fourth Amendment objections before striking his responses. Because Louis has not offered any coherent support for those objections, we reject this argument.

## V

Although, at the summary judgment stage of a civil forfeiture proceeding, Louis needed only show some evidence that he owned or lawfully possessed the defendant property, he failed to do so here. Louis's ambiguous verified claim was not sufficient to raise a genuine issue of material fact as to his Article III standing, and the district court permissibly struck his response to the government's Interrogatory No. 2 to prevent him from improperly using the Fifth Amendment privilege against self-incrimination as both a sword and shield. Accordingly, the district court did not err in granting the government's motion for summary judgment.

**AFFIRMED.**