HOWARD, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s opinion, except for its conclusion that Van Bommel demonstrated constitutional standing to contest the forfeiture of the $10,000 found on his person. Van Bommel did not prove by a preponderance of the evidence that he had a colorable interest in that money; he therefore lacks standing to contest its forfeiture.
As the majority explains, there is every reason to believe that Van Bommel was paid $10,000 to transport the bales of currency that he later threw into the sea. Thus, at one point Van Bommel had a colorable claim of ownership of that $10,000. But he signed a waiver that stated, in Spanish,
I understand that I have a right to assert a claim in the seized property described above [i.e., the $10,000] and to seek return of the property. With full knowledge of those rights, I hereby abandon any and all claims I may have to that property. I waive my right to receive notice of future administrative or judicial proceedings involving the property. I also waive any further right to contest the administrative or judicial forfeiture of the property described above.
I think the majority would agree that if this waiver is valid, Van Bommel has no *63 claim to the $10,000 and no standing to participate in this action. Van Bommel argues, however, that his waiver is void because it was involuntary and unintelligent. The majority believes that Van Bommel has produced sufficient evidence in support of this argument. For the reasons below, I disagree.
I. Background
Throughout this case, Van Bommel has worked tirelessly to prevent discovery of facts relating to his standing. I recount the relevant procedural history.
The government began this action by filing a complaint for forfeiture in rem on November 25, 2009. On December 22, 2009, Van Bommel pleaded guilty to conspiring to fail to heave to a helicopter, and on February 4, 2010, he was sentenced to time served. On February 26, 2010, Van Bommel’s counsel advised the government that Van Bommel was scheduled for a final removal hearing before an Immigration Judge just four days later, on March 2. Van Bommel’s counsel stated that the Immigration Judge had previously rejected a request for Van Bommel to remain in the United States pending the outcome of the forfeiture proceedings, so he “encourage[d] [the government] to complete any matters pertaining to any intended discovery, that would require Mr. Van Bommel’s presence in this district, before he is removed from the United States.” It appears that at the hearing, the Immigration Judge ordered that Van Bommel be removed on March 26. On March 4, the government responded to Van Bommel’s counsel that it was trying to stay Van Bommel’s removal so that he could be deposed, and it asked for dates on which Van Bommel’s counsel would be available for the deposition. Van Bommel’s counsel did not respond, and the government contacted him again on March 18 to arrange a deposition on March 24. Van Bommel’s counsel told the government that he would check his schedule to confirm the date. Instead of doing so, the next day he filed a claim in the forfeiture action for the seized bales of currency and the $10,000 found on his person. On the same day, he also filed a motion to dismiss the government’s complaint and unilaterally canceled the deposition, considering it “unnecesary [sic] based on the arguments raised in our motion.” The motion to dismiss featured Van Bommel’s bare, unexplained claims of ownership of the $10,000 and the bales of currency, but it nowhere mentioned that Van Bommel’s waiver of ownership was involuntary or unintelligent. When the government informed Van Bommel’s counsel that it intended to conduct the deposition with or without Van Bommel, he filed an emergency motion for a protective order staying the deposition, which the court granted without a response from the government.
For reasons that are not clear from the record, Van Bommel’s removal was postponed. He was still in the United States on April 13, when the government moved for summary judgment, asking the court to strike Van Bommel’s claim for lack of standing. The government argued that Van Bommel had waived his ownership of the seized currency, and it attached to its motion Van Bommel’s signed waivers of ownership of the bales of currency and the $10,000. As the government pointed out, a motion to strike a claim “must be decided before any motion by the claimant to dismiss the action.” Rule G(8)(c)(ii)(A), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (“Supplemental Rules”).
Van Bommel was removed from the United States a week later, on April 20.[15] *64 On May 3, he filed an opposition to the government’s motion for summary judgment. Attached to that motion was a declaration, dated April 29, which stated that his waiver of ownership was involuntary and unintelligent:
During law enforcement interviews I involuntary [sic] and unintelligently signed a Notice of Abandonment of All Rights and Interest in Property. I signed the papers after I was threatened to be prosecuted for drug smuggling if I did not abandon the currency. The law enforcement agents never advised me of any of my Fifth Amendment rights and I was completely unfamiliar with U.S. law. The Notice of Abandonment did not advise me of the full panoply of rights counsel later explained to me, i.e., the standards of proof under [the Civil Asset Forfeiture Reform Act of 2000], right to cross-examine witnesses, present evidence, right to be assisted by Counsel, and the right to have a jury determine the forfeitability of the defendant currency, so as to establish that I made a knowing and intelligent waiver of these rights and my Due Process right to contest the forfeiture of the defendant currency. Once advised by Counsel of these rights, I asserted my ownership interest in the currency and categorically pursued my right to contest the forfeiture of my currency.
On July 28, the district court entered an order scheduling an evidentiary hearing “to evaluate disputed issues of fact regarding claimant’s standing.” Van Bommel’s counsel did not notify the court that Van Bommel had left the United States and would be unavailable to testify, nor did he seek assistance from the court or the government with Van Bommel’s application to enter the United States on parole for the purpose of testifying. See 8 C.F.R. § 212.5(b)(4) (describing authority to parole “[a]liens who will be witnesses in proceedings ... conducted by judicial, administrative, or legislative bodies in the United States”). Instead, he sprang this information on the court at the evidentiary hearing, which took place on August 19.
At the hearing, the government was prepared to refute Van Bommel’s declaration by calling two agents who had secured Van Bommel’s signature on the waiver, but the court informed the government that they need not testify.[16] On March 15, 2011, the court entered an order stating,
Claimant provides no specific facts or details of the alleged coercion in his opposition to the motion for summary judgment, in claimant’s opposing statement of uncontested fact[s], or in his verified declaration under penalty of perjury. In fact, aside from a single paragraph of allegations in his own *65 sworn statement, claimant provides no evidence of law enforcement’s coercion in obtaining his waiver of rights and signature on the Notice. Nor was claimant able to testify to provide further details in support of his claim. Thus, claimant has failed to establish that his signature on the Notice was both unintelligent and involuntary,
(citations omitted). Therefore, the court held that Van Bommel “has failed to establish standing or raise a material issue of fact as to his Article III standing” and dismissed his claims.
II. Analysis
In a forfeiture proceeding, a claimant’s burden to establish standing depends on the stage of the litigation. At the pleading stage, standing is not difficult to establish. See United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir.2012); United States v. One-Sixth Share of James J. Bulger in All Present and Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 41 (1st Cir.2003) (“At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices.”). But when the court holds an evidentiary hearing, as the district court did here, the burden of proof rises: a claimant “carr[ies] the burden of establishing standing by a preponderance of the evidence.” Supplemental Rule G(8)(c)(ii)(B); Supplemental Rule G(8)(e)(ii) advisory committee’s note. Thus, Van Bommel “must prove by a preponderance of the evidence that he has a facially colorable interest in the res.” United States v. $148,840.00 in U.S. Currency, 521 F.3d 1268, 1273 (10th Cir.2008).
To establish standing at an evidentiary hearing, a party must present admissible evidence supporting its claims. United States v. $54.3,190.00 in U.S. Currency, 535 F.Supp.2d 1238, 1247 (M.D.Ala.2008); Stefan D. Cassella, Asset Forfeiture Law in the United States 381 (2d ed.2013); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that “each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation”). The Federal Rules of Evidence determine whether evidence is admissible in a civil forfeiture action. See Fed.R.Evid. 101(a), 1101; United States v. $92,203.00 in U.S. Currency, 537 F.3d 504, 509-10 (5th Cir.2008). Therefore, Van Bommel had the burden to produce admissible evidence that his waiver was unintelligent or involuntary.
Van Bommel’s declaration — the linchpin of his claim to standing — is inadmissible hearsay, not admissible evidence. Hearsay, of course, is a statement made outside of a trial or hearing, which a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R.Evid. 801. Van Bommel’s declaration is textbook hearsay: it was not made at a trial or hearing, and it was offered to prove that Van Bommel was coerced into signing the waiver. Generally, hearsay is inadmissible.[17] Id. 802. While there are *66 several exceptions to the rule against hearsay, see generally id. 803, 804, 807, none applies here. As a result, Van Bommel produced no admissible evidence whatsoever that his waiver was unintelligent or involuntary.[18] See United States v. All Funds in the Account of Prop. Futures, Inc., 820 F.Supp.2d 1305, 1331-32 (S.D.Fla.2011) (holding that claimants could not establish Article III standing through hearsay). This alone requires us to affirm the district court’s decision.[19]
Even assuming that Van Bommel’s declaration could have been considered at the evidentiary hearing, it was not enough to prove, by a preponderance of the evidence, that he had a colorable interest in the $10,000. “[J]udges simply cannot decide whether a witness is telling the truth on the basis of a paper record and must observe the witnesses’ demeanor to best ascertain their veracity — or lack thereof.” United States v. 1998 BMW "I" Convertible, 235 F.3d 397, 400 (8th Cir.2000) (citing Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). As the district court noted, Van Bommel offered a single paragraph with “no specific facts or details of the alleged coercion.” In determining whether Van Bommel had established his standing by a preponderance of the evidence, the court gave this lone paragraph the short shrift it deserved. See $133,b20.00 in U.S. Currency, 672 F.3d at 638 (“As we have explained, a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.” (internal quotation marks omitted)). Courts routinely demand more facts and evidence from claimants than Van Bommel was willing to provide. See Stefan D. Cas-sella, Asset Forfeiture Law in the United States 381-82 (2d ed.2013) (collecting cases). Van Bommel’s declaration falls far short of proving his standing by a preponderance of the evidence.
Finally, even if the district court had erred (which it did not), I believe that the *67 majority has chosen the wrong disposition by reversing the grant of summary judgment, rather than vacating it. The government came to the evidentiary hearing with two witnesses prepared to testify about the circumstances under which Van Bommel signed his waiver. Given Van Bommel’s failure to offer any evidence at the hearing, the court told the government that the witnesses’ testimony would be unnecessary. By reversing the grant of summary judgment and reinstating Van Bommel’s claim, the majority punishes the government for complying with the district court’s guidance. The more prudent course would be to vacate the grant of summary judgment and give the parties another opportunity to present their evidence on standing.
III. Conclusion
By letting this case proceed to the merits, the majority rewards Van Bommel’s gamesmanship.[20] Van Bommel’s counsel unilaterally canceled Van Bommel’s deposition, fought to have him removed from the United States, failed to make a serious effort to secure his attendance at the evi-dentiary hearing, and kept from the court that he had been removed months before that hearing. It is difficult to imagine a party trying harder not to meet its burden of proof. Nevertheless, the district court must now expend judicial resources on an abandoned claim to $10,000. On this point, I respectfully dissent.

. The government later told the district court that it had requested a stay of deporta *64 tion to depose Van Bommel, but the motion was denied because of Van Bommel’s counsel’s opposition. Van Bommel’s counsel did not object to this characterization of the facts.

. The court stated, “Here I take it that the burden remains on the plaintiff to prove that he has the standing. And even assuming that he has it, if there is a waiver that basically supports the relinquishment allegation that the government is presenting or the fact that the property was abandoned. Assuming in the best scenario for the claimant here that he is questioning that, or he has come forward with sufficient evidence to raise doubts as to the voluntariness, I think as far as can I go is to kind of even tip the scale further for no justified reason on the record, and listen to the testimony of the agent as to how this waiver was procured and what were the circumstances under which it was offered just like in a suppression hearing. But still recognizing that if the government puts the witness on the stand it will be at the Court[']s request not because it has the burden of doing so, in order to prove standing or in order to prove the validity of the document they have in their possession right now.”

. We have held that a court may receive hearsay at an evidentiary hearing on a motion for a preliminary injunction. Asseo v. Pan Am. Grain Co., 805 F.2d 23, 25-26 (1st Cir. 1986). In that case, however, we stressed "the need for expedition” that characterizes an injunctive proceeding, and that the hearsay at issue previously had been subject to cross-examination. Id. at 26. Neither circumstance exists here. Even if it were appropriate both to extend Asseo to an evidentiary hearing regarding standing in a forfeiture ac *66 tion, and to take the further step of requiring the affidavit’s admission, Van Bommel's declaration would be entitled to little or no weight, given its lack of factual detail and Van Bommel’s efforts to prevent cross-examination. Cf. Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir.2010) ("The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage.”).

. Van Bommel could have avoided this result by attending his deposition. If he was unable to return to the United States for the evidentiary hearing, he then could have offered his deposition testimony into evidence under Federal Rule of Evidence 804(b)(1).

. The district court had no need to address the admissibility of the declaration, since Van Bommel’s counsel never tried to move it into evidence. In any event, the transcript of the evidentiary hearing suggests that the court did not consider the declaration to be competent evidence: "The question would be, what is the evidence that you have of the threats? What is the evidence that you have that the waiver was not voluntarily signed?” Even if this was not the basis of the court's decision, we may affirm on any ground supported by the record. In re Miles, 436 F.3d 291, 293-94 (1st Cir.2006).
The majority views it as inconsistent to set aside Van Bommel’s declaration when deciding his standing to claim the $10,000, while relying on the government’s affidavit when deciding his standing to claim the bales of currency. There is no inconsistency. As to the bales of currency, Van Bommel either failed to counter the government’s allegations, or disputed them with allegations that were too vague or incredible to create a genuine dispute of material fact. Therefore, summary judgment was appropriate, without any need for more evidence. As to the $10,000, there was a genuine dispute about the circumstances of Van Bommel’s waiver. To prove his standing by a preponderance of the evidence, Van Bommel was obligated to produce something more than his bare-bones declaration.

. The majority states that I have focused too much on Van Bommel’s conduct and not enough on the record before the district court. This is a false distinction: Van Bom-mel’s efforts at avoiding the development of evidence were well documented in the record. In any event, I focus on this conduct not because I believe that Van Bommel should be punished for it, but because it demonstrates that Van Bommel failed to develop any evidence, despite his burden to prove his standing by a preponderance of the evidence.