**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

v.

$11,500.00 IN UNITED STATES
CURRENCY, in rem; $2,971.00 IN
UNITED STATES CURRENCY, in rem,
          *Defendants*,

and

CHARLES GUERRERO,
          *Claimant-Appellant*.

No. 11-35923

D.C. No.
3:10-cv-00097-
MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding
Malcolm F. Marsh, District Judge, Presiding

Submitted October 9, 2012[*]
Portland, Oregon

Filed March 20, 2013

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: Barry G. Silverman, Richard R. Clifton, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Clifton;
Partial Concurrence and Partial Dissent by
Judge N.R. Smith

## SUMMARY[**]

### Civil Forfeiture

The panel affirmed in part and vacated in part the district court's order in a civil forfeiture action under 21 U.S.C. § 881.

The government sought to forfeit two bundles of currency in the amounts of $11,500 and $2,971. The district court held with respect to the $11,500 that the claimant failed to comply with Supplemental Admiralty and Maritime Claims Rule G(5)(a)(iii) (requiring a claim form filed by a bailee must identify the bailor); and with respect to both amounts, the district court entered summary judgment in favor of the government because they were either the proceeds of drug trafficking or used to facilitate drug trafficking. The panel held that the district court's dismissal of the claim to $11,500 – based on the claimant's failure to identify the bailor – was an abuse of discretion, primarily because the omission did not prejudice the government, did not appear to be calculated, and did not delay or extend the forfeiture proceedings. The

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

panel further held that there was a genuine issue of material fact whether the $11,500 was derived  legitimately, and therefore the district court erred in entering summary judgment on this alternative basis.  Finally, the panel held that the government's failure to provide timely notice of the forfeiture to the claimant as to both amounts, pursuant to 18 U.S.C § 983(a)(1)(A)(i), did not require the government to return the property where the government subsequently commenced a forfeiture proceeding.  The panel affirmed the judgment forfeiting the $2,971, and vacated and remanded the portion forfeiting the $11,500.

Judge N.R. Smith concurred in part, and dissented in part. Judge N.R. Smith agreed that the government need not return the seized funds for failure to give timely notice where it had already commenced a forfeiture proceeding; and Supplemental Rule G(5)(a)(iii) required the claimant to identify the bailor. Judge N. Smith dissented because: he was not convinced that the district court abused its discretion in striking the claim for failure to comply with Supplemental Rule G(5); and in any event, he would affirm the summary judgment entered in favor of the government.

## COUNSEL

Frank de la Puente, Attorney, Salem, Oregon, for Claimant-Appellant.

S. Amanda Marshall, United States Attorney, Kelly A. Zusman, Appellate Chief, and Robert D. Nesler, Assistant United States Attorney, for Plaintiff-Appellee.

## OPINION

CLIFTON, Circuit Judge:

Civil forfeiture actions brought by the government require compliance with certain rules by both the government and by any claimant. In this case, the government and the only claimant each violated one of the rules. This appeal requires us to consider the appropriate consequences.

The government sought to forfeit two bundles of currency in the amounts of $11,500 and $2,971. Only one contrary claim was filed regarding both sets of currency. The district court concluded that the claimant failed to comply with Supplemental Admiralty and Maritime Claims Rule G(5)(a)(iii), which requires that "[a] claim filed by a person asserting an interest as a bailee must identify the bailor." Supp. Rule G(5)(a)(iii). The claim form filed here asserted a different property interest, described by the claimant as "possessory," and it did not identify a bailor. The claimant's alleged interest in the $11,500 later came to be identified as a bailee's interest. Based on the failure to identify the bailor, the district court struck the claim to the $11,500. We agree with the district court that the requirement applied to the claimant, even though he initially asserted a different interest. We also conclude, however, that striking his claim based on that transgression was not mandatory but was instead subject to the sound exercise of discretion by the court. Under the circumstances of this case, the dismissal of the claim to the $11,500 for that failure was an abuse of discretion, primarily because the omission did not prejudice the government, did not appear to be calculated, and did not delay or extend the forfeiture proceedings.

The district court concluded that the government failed to provide notice to the claimant within 60 days after the date of the seizure of both sets of currency, as required under 18 U.S.C. § 983(a)(1)(A)(i) for a nonjudicial civil forfeiture. Neither did the government return the money to the claimant. Instead, the government commenced civil forfeiture proceedings. It could properly do so, even though it had not given timely notice, and we conclude that the government was not required in these circumstances to return the property.

We thus affirm the judgment in favor of the government regarding the portion of currency amounting to $2,971. We vacate the judgment in favor of the government as to the $11,500 portion and remand for further proceedings.

## I.  Background

The currency at issue was seized when claimant Charles Guerrero ("Guerrero") went to a jail in Portland, Oregon, to post bail for his wife, Rosalie Guerrero ("Rosalie"), who had been arrested the night before for possession with intent to distribute heroin. Guerrero did not enter the jail himself but accompanied Virgil Wood and gave him $11,500 to post bail. At the jail, law enforcement agents asked Wood how he had obtained the currency. Wood eventually identified Guerrero as the source. Finding Guerrero outside the jail, law enforcement officers searched him and found $2,971 in his pocket, along with several pills. Guerrero was arrested and told the officers that the $11,500 and $2,971 were his.

The circumstances surrounding the seizure of the currency led the government to believe that the money was connected to drug trafficking. The officers discovered several

grams of heroin in a black bag in the trunk of Wood's car, and Guerrero later pled guilty to possession of heroin. A trained dog sniffed the currency for the odor of narcotics, and the government contends that the dog alerted positively.

The United States initiated civil forfeiture proceedings against the $11,500 and $2,971 under 21 U.S.C. § 881, on the basis that the currency was either proceeds of drug trafficking or used to facilitate drug trafficking. Guerrero filed the sole claim to the currency. In the claim he filed with the court, through counsel, he described his interest as "possessory." In a "seized asset claim form" attached to the court filing, he provided a handwritten response to an inquiry as to his interest: "My interest is possessory, i.e., the money belongs to me."

In his subsequent deposition Guerrero acknowledged that he had sold drugs and that he had not had stable employment for years. He maintained, however, that the seized currency came from legitimate sources. He testified that the $2,971 was money he had saved from the sale of some furniture and tools. With respect to the $11,500, Guerrero testified that his wife had received the money several years earlier from an insurance settlement and had given it to him for safekeeping.

The district court granted summary judgment to the government with respect to the $11,500, holding that Guerrero failed to comply with Supplemental Admiralty and Maritime Claims Rule G(5)(a)(iii), because he failed to identify Rosalie as his bailor on the claim form. The court further held, in the alternative, that there was no genuine issue of fact as to whether the $11,500 was the proceeds of or facilitated drug trafficking. The $2,971 was forfeited after a

jury found that it constituted proceeds of illegal drug activity and facilitated drug trafficking. Guerrero timely appealed.

## II. Bailor Identification Requirement

When the government initiates civil forfeiture proceedings against specified property, a person may contest the forfeiture by filing a claim in district court in accordance with the Supplemental Rules for Admiralty and Maritime Claims. 18 U.S.C. § 983(a)(4)(A). The claim must "identify the claimant and state the claimant's interest in the property." Supp. Rule G(5)(a)(i)(B). Among the other requirements, and the one at issue here, is that "[a] claim filed by a person asserting an interest as a bailee must identify the bailor." Supp. Rule G(5)(a)(iii). Supplemental Rule G(8)(c) specifically provides that the government may move to strike a claim for failure to comply with specified portions of the Supplemental Rules, including Supplemental Rule G(5), or because the claimant lacks standing.

The district court granted the government's motion to strike Guerrero's claim to the $11,500 for failing to identify Rosalie as the bailor of the currency on his claim form. The court's order noted that Guerrero "never pled the existence of a bailment, and did not identify Rosalie Guerrero as the bailor." The order also noted that Guerrero did not explain until his deposition that the money had been given to him by his wife, and further that Guerrero never sought to amend his claim form to identify her as the bailor.

We review a district court's interpretation of the Supplemental Admiralty and Maritime Claims Rules de novo. *See United States v. 2,164 Watches*, 366 F.3d 767, 770 (9th Cir. 2004). Dismissal of a forfeiture claim for failure to

comply with procedural requirements is reviewed for abuse of discretion. *See United States v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 868 (9th Cir. 2001). A district court abuses its discretion if it does not apply the correct legal standard, *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223 (9th Cir. 2000), or if it fails to consider the factors relevant to the exercise of its discretion. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841–42 (9th Cir. 2000). We conclude that the district court was correct in holding that Rule G(5)(a)(iii) applied to Guerrero, but that striking his claim was an abuse of discretion.

As described above, Guerrero's claim form stated that his interest in the currency was "possessory."  It was not until after the government moved to strike Guerrero's claim for lack of standing that Guerrero argued in response that he had an ownership interest in the currency by virtue of his marriage to Rosalie and further described his "possessory" interest as that of a "bailee for Rosalie." That was the first time that Guerrero or anyone else described Guerrero's relationship to the currency as that of a bailee. The court declined to strike Guerrero's claim based on a lack of standing, holding that there was a genuine dispute of material fact as to whether Guerrero was a bailee of the currency. But the court went on to strike Guerrero's claim for failure to identify Rosalie as the bailor.

Guerrero contends that the rule only requires the identification of the bailor when the claimant explicitly asserts a bailee interest on his claim form. Guerrero's claim form did not describe his interest as that of a bailee. The government argues that the bailor identification requirement did apply here.

The rule in question, Supplemental Rule G(5)(a)(iii), states under a subheading entitled "Filing a Claim" that "[a] claim filed by a person asserting an interest as a bailee must identify the bailor, and if filed on the bailor's behalf must state the authority to do so." That language does not explicitly spell out whether "asserting an interest as a bailee" refers only to the time the claim form is filed or includes a subsequent assertion of a bailee's interest.

We are persuaded that the requirement to identify the bailor applies to the assertion of a bailee's interest at any time, even if it is articulated after the claim form is filed. The purpose of the requirement is to provide the government and the court notice of the specific basis of the claim and the source of the property. *See United States v. Real Property*, 135 F.3d 1312, 1317 (9th Cir. 1998) (noting that the purpose behind forfeiture pleading requirements is "to inform the court that there is a claimant to the property who wants it back and intends to defend it"); *United States v. $321,470.00, U.S. Currency*, 874 F.2d 298, 304 (5th Cir. 1989) (in defending bailor identification as a standing requirement, noting that "a courier carrying cash from an unknown owner to an unknown recipient . . . the ideal mule for drug traffickers, must be prepared to demonstrate that he has a lawful possessory interest"). This purpose would be ill-served if a claimant could avoid the bailor identification requirement simply by describing his interest on the claim form in another way and waiting until later to identify it as a bailee's interest. Therefore, we conclude that the bailor identification requirement in Rule G(5)(a)(iii) applies to a claimant who asserts an interest as a bailee of contested property, even if he had not described himself as a bailee on his claim form. The rule thus applied to Guerrero.

Guerrero's claim should not have been dismissed as a result, however. The district court here did so because it understood that "strict compliance" with the forfeiture filing rule was necessary, citing our court's decision in *United States v. Real Property*, 135 F.3d 1312 (9th Cir. 1998). But the claimant's failure in that case was not like Guerrero's misstep here.  In *Real Property*, the claimant received notice of forfeiture proceedings but failed to file a timely claim of any kind, only challenging the forfeiture proceedings one year after receiving notice and six months after the government received a final judgment of forfeiture. *Id.* at 1313–14. In holding that failure to file a claim within the applicable time limits precluded the claimant from later challenging the forfeiture, we noted that allowing him to challenge a forfeiture judgment after so much time had elapsed would "exact a significant toll on judicial resources." *Id.* at 1317.  That does not mean that any deficiency in a claim form requires dismissal of a claim.

To the contrary, we have held that courts have "discretion to overlook the failure to conform to the requirements of [forfeiture claim rules]." *United States v. Real Property at 2659 Roundhill Dr., Alamo, Cal.*, 194 F.3d 1020, 1024 (9th Cir. 1999).  Among the factors relevant to the exercise of that discretion are whether the deficiency prejudiced the government, *see United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir. 1985), and whether it was a strategic attempt to gain some advantage. *See United States v. Real Prop. Located at 22 Santa Barbara Dr.*, 264 F.3d 860, 870 (9th Cir. 2001) (refusing to excuse noncompliance with Rule C(6) where the reason for claimant's failure to timely file a claim was strategic). After reviewing these factors, we conclude that it was an abuse of discretion to strike Guerrero's claim.

The failure of Guerrero's claim form to identify a bailee's interest and to list Rosalie as the bailor did not prejudice the government or delay the proceedings.  The government knew of Rosalie's identity and took her deposition, as well as Guerrero's. There is no basis to conclude that the government was unable to conduct a proper investigation. Regardless of how Guerrero characterized his possessory interest, the government was aware of the facts underlying Guerrero's possession of the currency.[1]

Nor was there any indication that Guerrero's failure to identify the bailor was a strategic attempt to gain some advantage. There was no advantage gained.  And it would not have been clear to Guerrero that failing to identify his interest with precise accuracy in the claim he filed would have been fatal.  *Cf. United States v. $260,242.00 in U.S. Currency*, 919 F.2d 686, 688 (11th Cir. 1990) (not holding claimant to knowledge of the requirement that he name his bailor because the Eleventh Circuit had not previously ruled on the specific issue).

In addition, the claim was dismissed without giving him an adequate opportunity to amend. In the dismissal order, the district court accurately noted that Guerrero did not seek leave to amend his claim.  But the district court could have offered that opportunity and did not do so. *See* Supp. Rule G Advisory Committee Notes ("[T]he court should strike a

---

[1] The dissenting opinion suggests, at 23–25, that the government was prejudiced by Guerrero's failure to identify his bailee interest, but the government did not itself so argue. Rather, it stood, as did the district court, on the proposition that "strict compliance" with Rule G(5) was required. As discussed above, we conclude that the court had discretion to overlook Guerrero's omission.

claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under Rule 15.").With regard to pleadings, our general practice is to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (stating that the policy of freely granting leave to amend is "to be applied with extreme liberality").

That approach should apply here. Though Guerrero never moved to amend his claim, the absence of a formal motion for leave to amend does not preclude the district court from granting it. *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.2 (9th Cir. 1990). It is not surprising Guerrero did not request leave to amend his claim. The government did not move to strike Guerrero's claim based on the failure to identify a bailor. Rather, the government premised its motion to strike on the ground that Guerrero's asserted ownership and possessory interests were insufficient for Article III standing.[2] Even after Guerrero described himself as a bailee in his brief opposing the motion, the government did not argue to the district court that the claim should be struck for violating the bailor identification requirement. Instead, the government argued that, because Guerrero had not asserted a bailee interest or identified a bailor on his claim form, the court should not construe Guerrero's claim as asserting a

---

[2] The government has not argued on appeal that Guerrero lacked Article III standing. Guerrero's testimony described a bailee interest in the currency, as we discussed above, and such an interest was sufficient for Article III standing. *See United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994) ("In order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items."), *superseded on other grounds by statute as stated in United States v. $80,180.00*, 303 F.3d 1182, 1184 (9th Cir. 2002).

bailee interest. Under these circumstances, we conclude that striking the claim because Guerrero failed to identify Rosalie as bailor in the claim he filed was an abuse of discretion.

## III.    Source of the $11,500

The district court also granted summary judgment for the government on the alternative ground that there was no genuine dispute that the $11,500 was proceeds of or facilitated drug trafficking. Guerrero challenges that ruling.

In reviewing the summary judgment, we must view the evidence in the light most favorable to Guerrero and determine whether there is any genuine issue as to whether the currency was derived from or facilitated drug trafficking. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012). In a civil forfeiture action, the government bears the burden of proving by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1).  Summary judgment is appropriate if there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a).

The government did not prove a link between the currency and a specific act of drug trafficking, but it was not required to do so, notwithstanding Guerrero's arguments to the contrary. The government may meet its burden with sufficiently strong circumstantial evidence linking the currency to drug trafficking in general. *See United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 984 (9th Cir. 2002) (affirming government's motion for summary judgment in light of substantial circumstantial evidence that currency was connected to drug trafficking, and where claimant refused to

disclose the source of the currency or provide any other evidence that the source was legitimate).

In granting summary judgment, the district court emphasized "the absence of some *admissible* evidence supporting the contention that the source of the $11,500 was the insurance settlement paid to Rosalie Guerrero two years prior to the seizure." (Emphasis in original.) This statement immediately preceded the district court's conclusion that other evidence offered by Guerrero in support of the insurance settlement as the source of funds (Rosalie's declaration and Guerrero's deposition testimony regarding the source of the money given to him by Rosalie) was not admissible evidence and could not be considered.[3]

Guerrero did offer admissible evidence that supported that proposition, however.    In particular, he presented a

---

[3] Guerrero also challenges the refusal of the district court to consider two pieces of evidence tending to support claimant's position that the currency was legitimately derived from Rosalie's insurance proceeds. Because we vacate the summary judgment on substantive grounds, we need not discuss the evidentiary rulings at length, but the exclusion of the evidence was not an abuse of discretion.   First, the court struck a declaration by Rosalie because she later invoked the Fifth Amendment and refused to answer questions about the source of the currency at her deposition. When a witness testifies and then invokes the Fifth Amendment to avoid adversarial testing of the truth of that testimony, a district court may strike that testimony to avoid distortion of the truth. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 640–42 (9th Cir. 2012).  Second, Guerrero tried to offer his own testimony as to what Rosalie told him about the currency's source. That was hearsay and was appropriately excluded. Guerrero argues that it should have been admitted under the residual hearsay exception, Federal Rule of Evidence 807. But a statement qualifying under the residual exception must have "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). No such guarantees were present here.

declaration from the attorney who represented Rosalie in her insurance claim. The declaration stated that Rosalie received insurance proceeds in the amount of $12,743.75 two years before the seizure, and an additional $11,096.05 on an undisclosed date, as compensation for injuries sustained in a car accident. The declaration attached and authenticated two documents supporting that contention. The district court did not rule that the lawyer's evidence was inadmissible. Indeed, the court's order even referred to the fact of the insurance payments to Rosalie, with citation to the attorney's declaration, as part of the background of the case.

The district court nonetheless concluded that "Rosalie Guerrero's receipt of an insurance settlement *more than two years* prior to the seizure in question does not give rise to a genuine dispute of material fact as to whether the seized currency represented a portion of that settlement or profits therefrom." It is clear that there was plenty of evidence to support an ultimate factual finding that the money came from drug sales. Viewing the evidence in the light most favorable to Guerrero as we must, however, we do not agree that the evidence was so conclusive as to eliminate a genuine issue as to the source of the $11,500.

The length of time between the insurance settlement and the seizure of the currency, more than two years, did not preclude a finding that the currency was legitimate. Guerrero testified that Rosalie was unemployed at the time she gave Guerrero the money, but there was no evidence about her employment status the rest of the time. It is not unreasonable to think that someone receiving a lump sum of money might set it aside for a rainy day.

The evidence of a positive dog sniff alert to the currency did not conclusively prove that the currency came from drug sales. Given that the Guerreros dealt drugs, a jury could reasonably infer that any money they had, even if legitimately derived, could have been exposed to drugs, such as the heroin found in Wood's vehicle at the scene of the forfeiture. And, there was some ambiguity in the record as to whether the drug dog properly alerted. In a document detailing the dog's training, the canine officer stated that his dog has been trained to scratch or bite at the source of narcotics. In his notes on the $11,500, however, he did not mention the dog scratching or biting but wrote "sniffed intently—alerted." That might mean that the dog sniffed intently and then alerted, or it might mean, as Guerrero argued, that the dog failed to scratch but that the officer nonetheless interpreted its sniff as an alert.

While the jury could draw inferences in favor of the government from Rosalie's refusal to testify, her refusal was not necessarily inconsistent with a legitimate source for the currency. Given her own problems with the law, her attorney may have advised her to play it safe and not answer any questions that might require her to acknowledge illegal activity. At her deposition, Rosalie's attorney expressed concern that if she answered even a seemingly innocuous question, the government would accuse her of "picking and choosing when to answer."

Guerrero did not have a lot of admissible evidence on his side, and a jury might well be persuaded by the government's evidence.  On the $2,971 bundle of currency, the forfeiture case went to trial, and the jury found in favor of the government. But Guerrero mustered enough evidence to permit a reasonable jury to conclude that the $11,500 was derived legitimately, and that was enough to establish the

existence of a genuine issue of material fact. The alternative basis identified by the district court cannot sustain the grant of summary judgment in favor of the government as to the forfeitability of the $11,500.

## IV.    Timeliness of Notice

The district court held that the government failed to provide Guerrero with timely notice of the forfeiture of both the $11,500 and the $2,971. The government held on to the money despite the failure to give notice, and it later commenced this civil forfeiture proceeding. Guerrero argued that 18 U.S.C. § 983(a)(1)(F) required that the money be returned to him. The district court disagreed and held that the statute did not require the return of the currency to Guerrero. We agree with the district court's interpretation.[4]

When the federal government seizes property under a civil forfeiture statute, it must send notice to potential claimants "in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure." 18 U.S.C. § 983(a)(1)(A)(i). If the government does not send proper notice in the time allotted, the statute provides that the government "shall return the property to [the person from whom the property was seized] without prejudice to the right of the Government to commence a forfeiture proceeding at a later time." 18 U.S.C. § 983(a)(1)(F). When

---

[4] The government argues that it complied with the applicable notice requirements, and urges the court to affirm on this alternative ground. Because we conclude that the government need not return the currency even if it failed to provide timely notice, we decline to reach the issue. We therefore assume, without deciding, that notice was not timely in the remainder of the opinion.

the government commences a civil forfeiture proceeding, it may seize the property. *See* 21 U.S.C. § 881(b); 18 U.S.C. § 981(b)(2).

This framework arguably suggests that if the government fails to give timely notice, it should return the property though it could then commence forfeiture proceedings and re-seize the property.  But is the government required to return the property even if it has in the meantime commenced forfeiture proceedings?

Some courts have held that it is – that when the government has failed to provide timely notice, it must return the seized property to the claimant even though it had already commenced forfeiture proceedings. *See De Saro v. United States*, 173 Fed. Appx. 760, 765–66 (11th Cir. 2006); *United States v. Assorted Jewelry with an Approximate Value of $219,860.00*, 386 F. Supp. 2d 9, 13 (D.P.R. 2005). But others have held that the government need not return the seized property. *See, e.g.*, *Return of Seized Property v. United States*, 625 F. Supp. 2d 949, 954–55 (C.D. Cal. 2009) (reasoning that the release of seized property would be "academic" because the government's initiation of forfeiture proceedings would allow it to immediately re-seize the property), *mandamus denied*, *In re Jordan*, 606 F.3d 1135, 1137 (9th Cir. 2010) (holding that such an interpretation was not clear error); *United States v. $114,031.00 in U.S. Currency*, No. 06-21820-CIV, 2007 WL 2904154, at *3 (S.D. Fla. Oct. 4, 2007) (noting that the plain language of section 983(a)(1)(F) allows the government to bring a forfeiture proceeding after returning seized property, but does not require the return of property before bringing a later proceeding).

In our view, the better and more practical interpretation of the statutory framework is that a failure to provide timely notice does not require the government to return the property if it has subsequently commenced a forfeiture proceeding. The government can still file a forfeiture action, and once it has done so, it is empowered to seize the property. By the time the issue was raised before the district court, the forfeiture proceeding was under way. Requiring the return of the property and then permitting the government to immediately re-seize it would impose a meaningless exercise.

## V.  Conclusion

The portion of the judgment forfeiting the $2,971 is affirmed, and the portion forfeiting the $11,500 is vacated. The case is remanded for further proceedings as to the $11,500.

**AFFIRMED in part; VACATED and REMANDED in part.**

N.R. SMITH, Circuit Judge, concurring in part, dissenting in part:

I agree that the government need not return seized funds for failure to give timely notice where it has already commenced a forfeiture proceeding.  I also agree that Supplemental Rule G(5)(a)(iii) required Guerrero to "identify the bailor," because he asserted an interest as a bailee in the proceedings below.  This is true even though he did not describe himself as a bailee on his initial claim form.

However, I write separately in dissent, because (1) I am not convinced that the district court abused its discretion in striking Guerrero's claim for failure to comply with Supplemental Rule G(5); and (2) in any event, I would affirm the district court's grant of summary judgment for the government.

## I.   The district court did not abuse its discretion in striking Guerrero's claim.

"Civil *in rem* forfeitures are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure." *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1117 (9th Cir. 2004). Supplemental Rule G(5)(a)(iii) (the rule at issue here) provides: "A claim filed by a person asserting an interest as a bailee must identify the bailor, and if filed on the bailor's behalf must state the authority to do so." Supplemental Rule G(8)(c) authorizes the government to move to strike any claim that "fail[s] to comply with Rule G(5) or (6) . . . ." Notwithstanding Supplemental Rule G(5)'s mandatory language, the majority correctly determined that the district court has discretion to excuse failure to comply. The Advisory Committee Notes to Supplemental Rule G state that "[a]s with other pleadings, the court should strike a claim or answer only if satisfied that an opportunity should not be afforded to cure the defects under [Federal Rule of Civil Procedure 15]."

A district court abuses its discretion only when it applies the wrong legal standard, or if it bases its conclusion on a factual finding that is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th

Cir. 2009). Here, the majority misapplies this standard. The majority overlooks ample support for the district court's decision to strike Guerrero's claim and instead concludes that the district court should have *sua sponte* allowed Guerrero to amend his claim under Federal Rule of Civil Procedure 15. Maj. Op. at 11–12. Given the ample support for the district court's decision, the majority's conclusion finds no support in Rule 15. While Rule 15 makes clear that courts should "freely give leave" to amend, the majority allows that phrase to swallow the district court's discretion.[1]

Nothing in our cases requires the district court to *sua sponte* order leave to amend after the close of discovery and the parties' dispositive motions. Indeed, our court and others have upheld a district court's discretion to deny leave to amend at that stage of litigation. *See, e.g.*, *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming denial of leave to amend where motion was filed on the "eve of the discovery deadline"); *Campbell v.*

---

[1] I reject any implication that the district court demanded "strict compliance" with Supplemental Rule G(5) and, thereby, abused its discretion by failing to consider whether it could properly excuse Guerrero's non compliance. The district court analyzed the factors relevant under Rule 15, though it did not label them as such. The district court observed that Guerrero never *requested* leave to amend his claim or offered any explanation for his failure to comply. The district court also noted that Guerrero failed to even raise the bailor/bailee issue until after the close of discovery and after the government's dispositive motions. Thus, although the district court did not use Rule 15 terms like "prejudice" and "delay," it is clear that it analyzed these factors.

*Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."). Similarly, the addition of a new legal theory weighs against leave to amend under Rule 15. *See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("'Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.'" (quoting *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)). In this case, because Guerrero asserted the bailor/bailee claim only after the close of discovery and the government's dispositive motion, the district court properly determined that these factors weigh against leave to amend.

The majority also fails to scrutinize Guerrero's delay in seeking amendment (i.e., his failure to ever request amendment from the district court). A party's undue delay and failure to explain the reason for the delay weigh against leave to amend under Rule 15. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996); *Texaco, Inc. v. Ponsoldt*, 939 F.3d 794, 799 (9th Cir. 1991). Here, the majority correctly points out that our cases do not *preclude* amendment, even though Guerrero never requested it. Maj. Op. at 12. Yet, the majority fails to cite any case that even suggests that a district court might abuse its discretion if it fails to order leave to amend *sua sponte*. Given that a number of Rule 15 factors weighed against leave to amend, the district court's dismissal of Guerrero's claim did not rise to the level of an abuse of discretion.

The majority's analysis focuses exclusively on two factors: prejudice and the likelihood of gamesmanship.

While these factors may guide our review under Rule 15, the majority fails to look at these factors through the deferential lens that our precedent requires. This deference to the district court requires that we affirm if these factors could plausibly weigh against leave to amend. *See Hinkson*, 585 F.3d at 1263. The record makes clear that the district court could plausibly find against Guerrero on these factors.

The majority concludes that the government suffered no prejudice from Guerrero's failure to identify his bailee interest, because the government knew that the funds belonged to Rosalie Guerrero. Maj. Op. at 11. Yet, the majority acknowledges that revealing the identity of the property's owner is not the only purpose of Supplemental Rule G(5). Rather, the purpose of the "identify the bailor" requirement "is to provide the government and the court notice of the *specific basis of the claim* and the source of the property." Maj. Op. at 9 (emphasis added). Similarly, Guerrero argues that we should hold his claim only to a notice pleading standard under Rule 8 of the Federal Rules of Civil Procedure. I agree with Guerrero and the majority that notice of the basis of a claim is an essential purpose of Supplemental Rule G(5). Accordingly, the issue is not whether the claim failed to give the government notice of Rosalie Guerrero's identity, but whether it failed to give the government notice of the specific basis of Guerrero's claim.

Guerrero's claim alleged a vague "possessory interest" and ownership of the $11,500. The claim failed to allege a bailor/bailee interest as a specific basis for relief. Thus,

Guerrero failed to give the government even Rule 8–level notice of his intent to later assert a bailor interest.[2]

Based on Guerrero's claim as pleaded, the government moved to strike the claim—pointing to Guerrero's lack of ownership and lack of possession (because he had given the funds to Wood). The majority points out that the government did not move to strike Guerrero's claim on the basis of his failure to identify the bailor. However, as the government asserts, it had no notice of this basis for the claim. Guerrero raised the bailor/bailee issue only in response to the government's motion to strike. Prior to that time, Guerrero had only argued that he had an ownership/possessory interest in the funds. Therefore, the government was surprised by Guerrero's sudden assertion of a bailee interest. Were it otherwise, the government would have needed to argue against Guerrero's assertion of a bailee interest in its prior briefing.

The record supports the conclusion that the timing of Guerrero's assertion of a bailor/bailee interest prejudiced the government. As discussed above, Guerrero did not assert a bailor/bailee interest until after the close of discovery. Prior to that time, the government's forfeiture case was geared toward Guerrero's claim that he owned the funds. While the majority notes that the government asked Guerrero about his "safekeeping" of the funds in his deposition, Maj. Op. at 6,

---

[2] Guerrero argues that a bailor/bailee relationship is simply a type of "possessory interest." I agree, and the vague assertion of a "possessory interest" might have been enough to alert the government that Guerrero would claim a bailor interest but for the "identify the bailor" requirement. Guerrero's failure to identify Rosalie Guerrero as the bailor entitled the government to rely on Guerrero's non-assertion of a bailor/bailee interest.

that question would not have alerted the government that Guerrero would later rely on a bailor/bailee theory. Instead, the government surely expected, after Guerrero's deposition, that it had won its case. After all, Guerrero had premised his claim on his ownership of the funds and then admitted that he did not own them. The government would not have known that it needed to disprove Guerrero's unpleaded bailee interest.

On appeal, it remains unclear to what extent Guerrero even asserts a bailee interest in the $11,500. In his Reply Brief, Guerrero argued that the district court erred, because Guerrero's assertion of an unadorned "possessory interest" was sufficient to comply with Supplemental Rule G. Guerrero claims he did not need to identify Rosalie Guerrero as the bailor because "[t]here was no bailee-bailor relationship between [Guerrero] and Rosalie." Thus, both in the district court below and on appeal, Guerrero seems to move fluidly between theories, claiming and disclaiming them as convenient. This is the exact sort of moving target that Rule G(5) aims to avoid. The majority's holding only serves to compound the government's prejudice.

With respect to the gamesmanship factor, the majority concludes that there is no indication that the decision to wait to raise the bailee issue was strategic. Maj. Op. at 11. However, this statement overlooks the fact that Guerrero had to have known the facts underlying his alleged bailor/bailee interest long before he raised the issue. Then, he raised the issue after discovery ended and in response to a dispositive government motion. While I stop short of accusing Guerrero or his attorney of outright gamesmanship, these actions at least infer such design. Such inference in the record should force us to affirm the district court.

## II. The district court did not err when it granted the government's motion for summary judgment.

The district court alternatively granted the government summary judgment.  The district court is correct that there is no genuine issue of material fact as to whether the $11,500 constitutes drug proceeds.  The majority relies on one piece of evidence to support its conclusion to the contrary: an affidavit of Rosalie Guerrero's personal injury attorney.  However, because the attorney has no personal knowledge of what Rosalie Guerrero did with the insurance proceeds she received, the affidavit establishes only that Rosalie Guerrero received a certain amount of money at a certain time.  *See* Fed. R. Civ. P. 56(c)(4); *see also Block v. City of L.A.*, 253 F.3d 410, 419 (9th Cir. 2001) (rejecting reliance on an affidavit to defeat summary judgment where the affidavit was "based on inadmissible hearsay," not personal knowledge).

It is well settled that a non-moving party must present "more than a 'mere . . . scintilla of evidence' to defeat a motion for summary judgment." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068 (9th Cir. 2011) (alteration in original) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).  The scintilla of evidence upon which the majority and Guerrero rely—the fact that Rosalie Guerrero received insurance proceeds—does not preclude summary judgment.  Without a competent witness to testify at trial that Rosalie Guerrero saved the funds, Guerrero's attorney would not even be able to argue that the $11,500 traces back to the insurance proceeds.

No witness would be able to testify in support of this argument.  As the majority acknowledges, Rosalie Guerrero would be unable to testify at trial, because she previously

invoked the Fifth Amendment.  *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008) ("Trial courts generally will not permit a party to invoke the privilege against self-incrimination with respect to deposition questions and then later testify about the same subject matter at trial."). As noted above, Rosalie Guerrero's attorney will not be able to testify at trial that the $11,500 was insurance proceeds, due to her lack of personal knowledge.  Similarly, Guerrero himself will be unable to testify of the funds' origin. Guerrero does not claim to have personal knowledge of the source of the funds.  To the extent he seeks to testify, based on information Rosalie Guerrero told him, it is hearsay.  As the majority notes, the district court did not abuse its discretion in refusing to consider these hearsay statements on summary judgment.

Contrary to the majority's view, the district court's conclusion did not require it to weigh the evidence before it. Rather, the government is entitled to summary judgment, because Rosalie Guerrero's attorney's affidavit, without more, does not raise a genuine issue of material fact and would not allow a jury to reasonably find in Guerrero's favor. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" (quoting *Anderson*, 477 U.S. at 252)).