**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2358

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAMIAN PHILLIPS,

Claimant - Appellant,

and

CURRENCY, $200,000.00 IN U.S.,

Defendant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, District Judge.  (1:14-cv-00836-LCB-LPA)

Argued:  January 24, 2018                           Decided:  February 21, 2018

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by published opinion.  Judge Motz wrote the opinion, in which Judge Wilkinson and Judge Niemeyer joined.

David Allen Bauernfeind, LAW OFFICE OF DAVID BAUERNFEIND, Raleigh, North Carolina, for Appellant.  Steven N. Baker, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

In this civil forfeiture case, the United States claims that $200,000 in cash discovered in a storage unit leased by Byron Phillips is subject to forfeiture because the cash is connected to the "exchange [of] a controlled substance." *See* 21 U.S.C. § 881(a)(6). Damian Phillips, Byron's brother, seeks to intervene, contending that the money is his life savings and has nothing to do with drugs. The district court granted the Government summary judgment, holding that Damian lacked standing to intervene. We affirm. Although claimants in civil forfeiture cases need only show a colorable interest in the property to have standing, the undisputed record evidence here establishes that Damian lacks such an interest.

I.

On April 4, 2014, detectives with the Durham County Sheriff's Office received reports of a marijuana odor emanating from a section of storage units at Brassfield Self Storage, located in Durham, North Carolina. After narrowing down the source of the odor with the help of a drug-sniffing dog, officers obtained a search warrant for a storage unit leased to Byron Phillips. Inside the unit, officers discovered a duffle bag with $200,000 in twelve vacuum-sealed plastic bags, though they did not find any marijuana. A drug-sniffing dog later alerted to the cash, indicating an odor of narcotics. Byron had previously been convicted of maintaining a vehicle or dwelling for controlled substances, and, in a separate incident, felony possession of marijuana.

Damian Phillips filed a verified claim stating that the currency found in the storage unit belonged to him, not his brother, Byron, and that the currency "was not [us]ed or intended to be used in exchange for controlled substances or to traffic in controlled substances." In support, Byron submitted a declaration stating that he had allowed his brother to store Damian's life savings of $200,000 in the storage unit.

During discovery, Damian asserted that he had accumulated the $200,000 between 2003 and 2013 by saving his earned income, a workers' compensation settlement, and unemployment benefits. He explained that he played professional football in the NFL and Arena Football League in 2003, worked as a counselor from 2004 to 2010, worked for a city parks and recreation program from 2004 to 2006, and received the settlement in 2008 and unemployment benefits from 2010 to 2011.

Damian's tax returns show that his adjusted gross income was $20,257 in 2003, $15,118 in 2004, $8,820 in 2006, $43,577 in 2007, $60,434 in 2008, $32,912 in 2009, and $10,168 in 2014. The IRS had no record of tax returns filed in 2005 or from 2010 to 2013. Phillips also produced a copy of a $40,095.45 settlement check. And he stated that he received $216 per week in unemployment benefits from November 2010 to November 2011, equivalent to $11,232 for a full year. The gross income reported in tax returns, the settlement, and the unemployment benefits add up to $242,613.45.

Damian admitted that in 2006 and 2010, car dealerships repossessed his vehicles, and that in November 2012, he and his wife were four months ($8,400) behind in their rent payments. In addition, his wife filed for bankruptcy on August 27, 2012. Damian also provided estimates of his monthly expenses from 2003 through 2014, ranging from

3

$750 (in months when he allegedly lived with family members and paid no rent) to $4,552 (in the year 2013). The car payments and monthly expenses that Phillips reported he had incurred from 2003 through March 2014 totaled approximately $250,000.

The Government moved for summary judgment, contending that Damian had not submitted sufficient evidence to establish Article III standing. The district court granted the motion, holding that he lacked standing and that the Government was entitled to forfeiture of the $200,000 found in the storage unit. Damian timely appealed. We review de novo the district court's decision to dismiss for lack of standing. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

II.

We initially address a matter of first impression in this circuit: the appropriate test for third-party standing in civil forfeiture cases. To establish Article III standing, a party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To meet these requirements, a claimant seeking to challenge a civil forfeiture must have an ownership or possessory interest in the property, "because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by return of the seized property." *United States v. $17,900*, 859 F.3d 1085, 1090 (D.C. Cir. 2017) (quoting *United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir. 1998)); *United States v. Contents of Accounts Nos. 3034504504 & 144-07143*, 971 F.2d 974, 985 (3d Cir. 1992).

4

As in all cases, the "manner and degree of evidence required" to establish standing depends on the "stage[] of the litigation." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, a claimant in a civil forfeiture case need only *allege* a possessory or ownership interest in the property. *See $17,900*, 859 F.3d at 1090; *United States v. $133,420*, 672 F.3d 629, 638 (9th Cir. 2012). "In response to a summary judgment motion, however, the [claimant] can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

Our court has not previously addressed the "manner and degree of evidence required" for a claimant to establish standing at the summary judgment stage in a civil forfeiture proceeding. Every court of appeals that has addressed the issue in the last twenty years has used the "colorable interest" test, which requires a claimant to present "some evidence of ownership" beyond the mere assertion of an ownership interest in the property. *See United States v. $81,000*, 189 F.3d 28, 35 (1st Cir. 1999); *Torres v. $36,256.80*, 25 F.3d 1154, 1158 (2d Cir. 1994); *Mantilla v. United States*, 302 F.3d 182, 185 (3d Cir. 2002); *Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000); *United States v. $515,060.42*, 152 F.3d 491, 497–98 (6th Cir. 1998); *United States v. $239,400*, 795 F.3d 639, 642–43 (7th Cir. 2015); *United States v. One Lincoln Navigator 1998*, 328

5

F.3d 1011, 1013 (8th Cir. 2003); *$133,420*, 672 F.3d at 639 (9th Cir.); *United States v. $148,840*, 521 F.3d 1268, 1276 (10th Cir. 2008); *$17,900*, 859 F.3d at 1090 (D.C. Cir.).[1]

We agree that the colorable interest test applies to determine a claimant's standing to challenge a civil forfeiture.  As other courts have recognized, demanding more than "some evidence" of ownership in such cases would be inappropriate in part because of "how challenging it can be to document ownership of property seized by law enforcement."  *See $17,900*, 859 F.3d at 1090.  This is especially true for cash, as "the very qualities that make paper money useful for illicit activity — in particular, its untraceability — often make it difficult to prove that any cash is legitimate, no matter its source."  *Id.*

Moreover, applying the colorable interest test "preserves the important distinction between constitutional standing and the merits" of a civil forfeiture case.  *Id.* at 1091.  Although a claimant bears the burden of establishing standing, the government bears the burden of proving, on the merits, "that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1).  Here, for example, the Government contends that the currency is linked to

---

[1] One older case held that ownership "by one who does not exercise dominion and control over the property is insufficient to establish standing."  *United States v. 5000 Palmetto Drive*, 928 F.2d 373, 375 (11th Cir. 1991).  In another even older case, the Eighth Circuit suggested that ownership might require "attendant characteristics of dominion and control."  *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 604 F.2d 27, 28 (8th Cir. 1979).  However, the court did not resolve the question of standing in that case, instead remanding for the district court to do so.  *See id.* at 28–29.  And the Eighth Circuit has since clarified that the burden of establishing standing in civil forfeiture cases "is not rigorous," because a "claimant need only show a *colorable interest* in the property."  *One Lincoln Navigator 1998*, 328 F.3d at 1013 (emphasis added) (internal quotation marks and citation omitted).

the "exchange [of] a controlled substance." Damian contends to the contrary, namely, that the cash is his life savings, not drug money. Requiring him to prove that assertion by demonstrating something more than a colorable interest could impermissibly shift the merits burden to him — essentially requiring *him* to prove that the money is *unconnected* to drug activity.

Our *criminal* forfeiture cases — in which we have held that, to have statutory standing, a third party must demonstrate "dominion and control" over the forfeited property — in no way conflict with our holding today. *See In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005); *United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000). In those cases, we did not address Article III standing to challenge a forfeiture at all, but rather described the *statutory* standing requirements unique to criminal forfeiture proceedings, contained in 21 U.S.C. § 853(n)(6).

Because criminal forfeiture is an action brought against a defendant as part of the prosecution of that defendant, there is only a very limited possibility for a third party to intervene: "Following the entry of an order of [criminal] forfeiture," a third party may, within thirty days, "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *Id.* §§ 853(n)(1), (2). At this hearing, the petitioner must establish that he or she had a "legal right, title, or interest in the property" at the time of the criminal acts that gave rise to the forfeiture. *Id.* § 853(n)(6)(A). These statutory requirements apply only in criminal forfeiture cases, not in civil forfeiture cases.

Furthermore, the requirement in § 853(n)(6) that a claimant provide more evidence of ownership in criminal forfeiture cases does not present the same risk of shifting the

7

merits burden away from the Government.  This is so because § 853(n) allows a claimant to intervene in a criminal forfeiture proceeding only *after* the court has already resolved the merits and ordered forfeiture.  By contrast, in civil forfeiture cases, a claimant with standing may intervene earlier to contest the forfeiture on the merits.

For these reasons, we hold that a claimant challenging a civil forfeiture must have a colorable interest in that property, which he or she must support with some evidence beyond a mere assertion of ownership to survive summary judgment.

III.

Having articulated what claimants must show to establish standing in a civil forfeiture case, we turn to whether Damian Phillips has met that requirement here.  In doing so, we view the evidence in the light most favorable to him and draw all reasonable inferences in his favor.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam).

Damian does not contend that he had a possessory interest in the money; instead, he claims an ownership interest.  Under the colorable interest test, a claimant alleging an ownership interest in seized property must, at a minimum, present some evidence "regarding how the claimant came to possess the property."  *$515,060.42*, 152 F.3d at 498.  Although courts must refrain from weighing the evidence on summary judgment, courts "may lawfully put aside testimony" that is "undermined either by other credible evidence" or by "physical impossibility."  *See $17,900*, 859 F.3d at 1093 (internal quotation marks and citations omitted).

8

Here, Damian alleged facts purporting to show that beginning in 2003, he accumulated $200,000, which he then secured in his brother's storage unit, where it was uncovered in 2014. But Damian presented no objective evidence corroborating those facts. Indeed, the undisputed record evidence demonstrates exactly the opposite: that he simply could not have saved $200,000.

As summarized above, Damian's total income from 2003 to 2014 was $242,613.45, adding up all income that he reported from any source, including his unemployment benefits. If Damian saved $200,000, he would have had $42,613.45 on which to live during that twelve-year period — but according to Damian himself, his expenses in 2013 *alone* totaled $54,624. Viewed in total, the expenses Damian acknowledges from 2003 through March 2014 — $250,000 — were *greater* than his income, meaning he could not have saved *any* money, let alone $200,000.

The record contains further evidence of Damian's significant financial troubles during this period, including two car repossessions, his wife's bankruptcy, failure to file tax returns in 2005 and 2010–2013, and delinquency in making rent payments. Though we need not rely on this additional evidence, it confirms that Phillips cannot be the owner of the $200,000 found in the storage unit.

To resist this conclusion, Damian relies heavily on his "consistent, unwavering assertion of ownership" in the $200,000. Appellant Reply Br. at 11. That assertion, no matter how unwavering, does not suffice to show the colorable interest needed to establish standing, for the colorable interest test requires some evidence *beyond* a mere assertion.

Damian also suggests that the years in which the IRS had no tax returns from him constitute "blanks" in the evidence that must be construed in his favor. *See* Oral Arg. at 10:10–10:25. In Damian's view, this court must presume that he had legitimate income in years for which no evidence of income exists. Damian is mistaken. We construe *evidence* in the light most favorable to the non-movant; we do not similarly construe an absence of evidence. Were it otherwise, parties opposing summary judgment would be best advised to submit no evidence at all, assured that the court would fill the void with imaginary evidence that favors them.

In sum, Damian did not merely fail to provide some evidence to show a colorable interest in the property; the undisputed evidence affirmatively proves the contrary. We therefore affirm the judgment of the district court that Damian lacked standing.[2]

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[2] Damian also argues that the district court should have held an evidentiary hearing on the question of standing. But he cites no authority suggesting that a district court ever *must* hold such a hearing; the cases he points to merely indicate that a district court *may* do so. Moreover, because Damian did not request such a hearing below, he cannot raise that argument for the first time on appeal. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014).