NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0086n.06

Case No. 22-3392

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) | Feb 13, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| $774,830.00 IN U.S. CURRENCY, | ) | STATES DISTRICT COURT FOR THE |
|  | ) | NORTHERN DISTRICT OF OHIO |
| Defendant, | ) |  |
|  | ) | OPINION |
| ALEXANDRE P. HAUSSMANN, | ) |  |
| Claimant - Appellant. | ) |  |

.

Before: CLAY, GIBBONS, and McKEAGUE, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which McKEAGUE, J., joined. CLAY, J. (pp. 12–18), delivered a separate dissenting opinion.

**JULIA SMITH GIBBONS, Circuit Judge.** The United States filed a Verified Complaint in Forfeiture seeking the forfeiture of $774,830.00 in U.S. currency recovered from a rental vehicle driven by Alexandre Haussmann. Haussmann responded by filing a Verified Claim to assert an ownership and possessory interest in the currency. After initial discovery, the government moved for summary judgment on the issue of Haussmann's standing to contest the forfeiture. The district court concluded that Haussmann did not satisfy his burden to demonstrate constitutional standing, and therefore granted summary judgment for the government, dismissed Haussmann's motion to suppress as moot, and entered judgment for the government. Haussmann appeals the district court's conclusions on the grounds that he had standing to contest

the forfeiture. Because Haussmann sufficiently establishes his standing at summary judgment, we reverse the district court's grant of summary judgment to the government and its dismissal of Haussmann's motion to suppress, vacate its entry of judgment, and remand for further proceedings.

I.

On April 21, 2020, law enforcement officers stopped Claimant Alexandre Haussmann for a traffic violation when he was driving a rental vehicle on Interstate 80 near Youngstown, Ohio.[1] As a result of the stop and after a subsequent search of his car, the officers seized $774,830.00 in U.S. currency from the trunk of the rental vehicle. When the United States Customs and Border Protection commenced an administrative forfeiture proceeding, Haussmann filed a sworn claim of ownership to the currency, ending the administrative proceeding and beginning the civil forfeiture action.

On September 16, 2020, the government filed a Verified Complaint seeking forfeiture of the recovered currency. It alleged that law enforcement stopped Haussmann for a traffic stop and, during a subsequent search of the car he was driving, they discovered a suitcase in the trunk containing the currency. The complaint also alleges that Hausmann ". . . told law enforcement officers that he was transporting approximately $800,000 but he declined to claim ownership of the currency." DE 1, Compl., Page ID 7. In response, Haussmann filed a Verified Claim in which he asserted a claim of "ownership and possessory interest in, and the right to exercise dominion and control over, all of the defendant property." DE 8, Verified Claim, Page ID 32. Haussmann also filed an answer to the government's complaint, admitting that he was in possession of the

---

[1] The district court notes that the parties never filed a joint statement of uncontested facts or a joint notice stating the lack of uncontested facts. Thus, the facts included here are those stated by the district court in its order granting summary judgment for the government or those stated—and uncontroverted—by both parties on appeal.

currency but denying that he told law enforcement anything further regarding the currency or his relationship to it.

A day before Haussmann filed his answer, the government served him with special interrogatories to gather information related to his standing to oppose the forfeiture, issued under Rule G(6)(a) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions. Haussmann answered the first interrogatory in full, providing his name and personal identifiers. The next sixteen interrogatories requested how Haussmann came to possess the currency, (Interrog. No. 2), the identity of the person or entity from whom Haussmann received the currency, (Interrog. No. 3), and, among other requests for information about his relationship to the defendant currency, the personal information of any other individuals involved with providing him with the currency or expecting to receive it (Interrog. No. 7).

Haussmann objected to all sixteen remaining interrogatories. He primarily argued that the government requested information that exceeded the narrow scope of the special interrogatories, limited to information bearing on his standing. However, his objections also included assertions of ownership: he stated that he "own[ed] all of the Defendant currency seized from the vehicle [he] rented and had just been driving and . . . had and ha[s] a right to possess it and otherwise exercise dominion and control over it." DE 39-1, Claimant's Interrog. Resp., Page ID 262. Haussmann also failed to produce any documents in response to the government's later-served Rule 34 Request for Production of Documents and objected to any production to the request on Fourth Amendment grounds.

The government then moved for summary judgment, arguing that Haussmann failed to demonstrate standing to oppose the forfeiture. Its motion also sought to strike Haussmann's verified claim and his answer to the complaint. In response, Haussmann argued that the

government's motion was a "grandstanding effort by the government to poison this Court against [him]" and "circumvent the Fourth Amendment" by requesting that the court determine standing before deciding Haussmann's pending motion to suppress, which he filed earlier in March 2021. DE 45, Claimant's. Resp. to Govt's Supp. Mot. for Summ. J., Page ID 468; *see also* DE 25, Am. Mot. to Suppress Evidence.

Finally, in a later deposition supplementing the government's summary judgment motion, Haussmann again claimed ownership of the seized currency but objected to further questioning about such ownership on Fourth Amendment grounds. Although Haussmann answered questions about his checking account, financial assets, and his travel before being stopped by law enforcement, he refused to answer questions about (1) his federal income tax, (2) his intended travel, (3) any contacts, including anyone he planned to meet had he not been stopped, (4) how he obtained or came into ownership of the defendant currency, and (5) his relationship to the currency.

The district court granted summary judgment for the government. It concluded that Haussmann had not established Article III standing because his "naked assertions of an ownership and possessory interest, together with his refusal to bring forth supporting facts . . . left the [c]ourt with 'nothing more than a record devoid of any evidence providing a claim of ownership to the seized currency.'" DE 49, Mem. Op. & Order, PageID 517-18 (citing *United States v. $39,000.00 in U.S. Currency*, 951 F.3d 740, 742 (6th Cir. 2020) (internal citations omitted)). After concluding that Haussmann lacked standing, the court also denied Haussmann's motion to suppress as moot. This timely appeal followed.

## II.

We review a district court's grant of summary judgment de novo. *Miles v. S. Cent. Hum. Res. Agency*, 946 F.3d 883, 887 (6th Cir. 2020). Summary judgment is appropriate "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 441 (6th Cir. 2021). We consider the factual record, together with all reasonable inferences derived therefrom, in the light most favorable to the non-movant. *Mays v. LaRose,* 951 F.3d 775, 783 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

A claimant's standing to contest civil forfeiture is a threshold jurisdictional matter that we review de novo. *See $39,000.00*, 951 F.3d at 742. As the party seeking to intervene in an in rem forfeiture action, a claimant must establish his constitutional standing throughout the litigation. *See United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008).

At summary judgment, we consider whether a claimant has established a "colorable ownership, possessory or security interest in at least a portion of the defendant property" such that he would be injured by its forfeiture. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). Although a claimant must establish that "facially colorable interest" in the defendant property, he need not prove its existence on the merits. *Id*. at 497-98 (internal citations omitted). To determine whether there is "sufficient proof of property interests to establish standing and avoid summary judgment on the standing issue," we consider the "pleadings, depositions, answers to interrogatories and admissions on file." *Id.* at 499 (citing Fed. R. Civ. P. 56(c)).

## III.

Haussmann challenges the district court's grant of summary judgment to the government on the basis that he lacked standing to contest the civil forfeiture, as well as the district court's denial of his motion to suppress based on mootness. Because Haussmann establishes standing to

contest the civil forfeiture, we reverse the district court's grant of summary judgment to the government and its dismissal of Haussmann's motion to suppress, vacate its entry of judgment for the government, and remand for further proceedings.

A.

The government argues that, at the summary judgment stage, our precedent bars a claimant from relying solely on assertions of ownership stated in a verified claim or answer, and instead requires a claimant to furnish specific facts to support its ownership over the currency. According to the government, because Haussmann only asserted an ownership and possessory interest in his Verified Claim but failed to provide any additional facts supporting standing, the district court properly concluded that he lacked standing to assert his forfeiture claim.

But Haussmann argues that the standard to establish standing at the summary judgment phase is less onerous than the standard the district court applied. Relying on *United States v. $515,060.42 in U.S. Currency*, Haussmann argues that, while naked *possession* claims are insufficient to establish standing at summary judgment without a further explanation or contextual information supporting the claimant's relationship to the defendant property, assertions of an *ownership* interest, combined with the admissions by the government of a claimant's association with the currency, are sufficient factual support. Like the factual circumstances in *$515,060.42*, Haussmann argues that he has standing because he asserted an ownership interest and the government also made allegations regarding the nature of his involvement with the currency. Thus, he argues that the district court erred by applying a higher standard than necessary to establish standing at summary judgment.

In cases in which a claimant asserts an ownership interest, the type of additional explanatory evidence urged by the government here and required by the district court is not

essential for a claimant to demonstrate standing in connection with a summary judgment motion. *See $31,000.00 in U.S. Currency*, 774 F. App'x 288, 291 (6th Cir. 2019) ("A verified claim alleging ownership usually demonstrates" the interest sufficient for standing at summary judgment, but ". . . [a] mere possessory interest in the property, by contrast, requires additional 'explanatory evidence.'"). Rather, we have held that an assertion of ownership and *some evidence of that ownership in the record* are together sufficient at summary judgment to establish a claimant's standing to contest a civil forfeiture. *See, e.g., $515,060.42 in U.S. Currency,* 152 F.3d at 499 (standing established from claimants' verified claim asserting property interest and government's complaint and briefing indicating claimant's relationship to seized currency); *see also United States v. $148,840.00 in U.S. Currency,* 521 F.3d 1268, 1277 (10th Cir. 2008) (finding claimant's assertions of ownership interest, combined with government's concession that money was recovered from the car claimant was driving, sufficient to establish standing). "[W]e are attentive to the core jurisdictional issue, whether or not Article III's requirements are satisfied, and are less concerned with whether . . . claimants [are] the source of the evidence relating to standing." *$515,060.42 in U.S. Currency*, 152 F.3d at 499.

Our decision in *$515,060.42 in U.S. Currency* is instructive. There, we held that a claimant who asserted an ownership interest in currency seized as part of a bingo game operations investigation in Tennessee established constitutional standing to challenge the forfeiture at summary judgment. *Id.* at 495. We concluded that the claimant did not need to supplement its claim of an ownership interest "with additional evidence" because the record—including the claimant's ownership assertions in its verified claim and answer to the complaint, coupled with the government's own allegations of the claimant's relationship to the seized currency in its complaint and briefing to the district court—sufficiently established the claimants' constitutional

standing. *Id.* at 499 ("While Jellinek's claim did not provide evidence of its ownership interest . . . Jellinek's claim of ownership, together with its answer to the Government's complaint and the Government's allegations of the nature of Jellinek's involvement with part of the seized currency, are sufficient to establish its standing."). Allegations offered in the government's complaint and briefing supported the claimant's establishment of a "colorable interest in seized property." *Id.* at 500.

The dissent offers an alternative reading of *$515,060.42 in U.S. Currency*. It argues that we only found that the claimant in *$515,060.42* established standing because the government and claimant provided evidence of how the funds at issue were procured. Here, the dissent explains, the government's factual allegations that Haussmann was operating the car containing the currency when it was seized, and that he told the officers the approximate amount of the currency, do not satisfy the same standard. However, our conclusion in *$515,060.42* that the claimant sufficiently established standing was not because the specific provenance of the currency had been established. Rather, our analysis relied on the verified claim of ownership, the claimant's answer to the Government's complaint, and the Government's allegations of "the nature of Jellinek's involvement with part of the seized currency." 152 F.3d at 499. We also noted that the claimants "could have produced more concrete evidence of ownership or possession of the seized currency," *id.* at 501, as indeed Haussmann could have done here. Despite that, the court in *$515,060.42 in U.S. Currency* still determined that the factual allegations in the record sufficiently explained ownership and possession to confirm standing because "conclusively establishing the claimants' ownership" was not at issue. *Id.* We find it important to preserve the individual roles of standing and a merits determination of ownership and not collapse the two inquiries.

Haussmann's assertions and the government's contribution to the record likewise establish a colorable ownership interest in the defendant property sufficient to establish constitutional standing at this stage. Haussmann asserted his ownership interest in the seized currency in his Verified Claim, his Answer, and his response to the government's Rule G(6) Interrogatories. Moreover, the government has also alleged in its complaint that it seized the currency directly from the trunk of Haussmann's rental car, when he was operating it—an admission that he exercised some form of control over it at the time of its seizure. *See* DE 1, Compl., Page ID 2; *see also $148,840.00 in U.S. Currency,* 521 F.3d at 1277. These factual allegations do not conclusively establish Haussmann as the owner of the currency, as that is not the issue of standing. *See $515,060.42 in U.S. Currency*, 152 F.3d at 501. Instead, they are sufficient to demonstrate a facially colorable claim and give him the right to contest the forfeiture.

The district court's error in concluding that Haussmann lacked standing was two-fold. First, it failed to acknowledge that the government's contributions to the record could support Haussmann's claim for standing. *See $515,060.42 in U.S. Currency,* 152 F.3d at 499. Second, the court also did not recognize that, in every case on which it relied, the court had previously struck a defendant's verified claim of ownership *before* granting summary judgment for lack of standing. *See United States v. $99,500.00 U.S. Currency Seized on Mar. 20, 2016*, 795 F. App'x 332, 337 (6th Cir. 2019) (affirming district court's strike of claimant's verified claim and answer before affirming grant of summary judgment for lack of standing); *$31,000.00 in U.S. Currency*, 774 F. App'x at 292 ("Had the district court not struck [claimants'] verified claims, their silence would have made this a closer case; *a verified claim of ownership almost always provides standing at summary judgment.*") (emphasis added); *United States v. $46,340.00 in U.S. Currency*, 791 F. App'x 596, 597 (6th Cir. 2020), *cert. denied sub nom. Abernathy v. United States*, 141 S. Ct. 265

(2020) (affirming district court's strike of defendant's verified claim before affirming district court's grant of summary judgment for lack of standing); *$39,000.00 in U.S. Currency*, 951 F.3d at 742 (same); *United States v. $68,812.00 in U.S. Currency*, 831 F. App'x 205 (6th Cir. 2020) (same).[2] Without that ownership interest, a defendant's bare assertions of possessory interest were insufficient to support standing at summary judgment in those cases.

This case may have had a different outcome had the district court exercised its discretion to strike Haussmann's ownership assertions due to his repeated refusals to participate in certain aspects of the discovery phase. Although the government's motion for summary judgment also urged the court to strike Haussmann's verified claim, the district court did not address the government's motion to strike.[3] The district court was therefore required to view that assertion, made under oath, in a light most favorable to Haussmann within its standing analysis. Because Haussmann asserted his ownership interest in his verified claim, answer, and interrogatory responses, and because the government furnished evidence of Haussmann's control of the rental vehicle when the currency was seized from its trunk, he established constitutional standing at this

---

[2] Our opinion in *$68,812.00* does not directly state that the district court struck the defendant's verified claim, but the underlying district court decision acknowledges that it struck the claimant's verified claim before granting summary judgment to the government. *See* Order, *United States v. $68,812.00 in U.S. Currency*, No. 1:18-cv-00599-SO, R. 33, at Page ID 218 (N.D. Ohio Nov. 20, 2019) ("Because Claimant has provided no evidence supporting her claim of ownership, the court strikes her claim. . . [s]triking Claimant's assertions of ownership from her verified claim 'le[aves] the record devoid of any other evidence that would demonstrate standing to contest the forfeiture.'") (quoting *$31,000.00*, 774 F. App'x at 292)).

[3] While a motion to strike for lack of standing may be presented as a motion for summary judgment pursuant to Supplemental Rule G(8)(c)(1), the district court granted summary judgment without addressing whether it struck Haussmann's verified claim in the process. It appears that the court considered Haussmann's verified claim as insufficient evidence to support standing but did not strike the claim before considering whether summary judgment was appropriate. *See* DE 49, Mem. Op. & Order, Page ID 516 ("summary judgment in favor of the Government is appropriate because Claimant has only declared an ownership and possessory interest in Defendant property through his Verified Claim."). On appeal, the government argued that Haussmann did not present any evidence *apart* from the verified claim to support standing. It did not request that we construe the district court's order as striking the verified claim, nor that we determine that Haussmann's claim should have been stricken despite the district court's failure to decide this issue. At oral argument, the government stated that it thought about making the argument that the district court implicitly granted the motion to strike, but did not. (Oral Argument at 30:33–30:56). Unlike the dissent, we therefore decline to consider these possible alternative bases for affirmance.

stage of the litigation. The district court erred in holding otherwise. Notably, the finding of Haussmann's standing at this stage of the litigation "does no more than give him the right to contest that his property rights in the cash are properly subject to forfeiture;" it is not a ruling on the merits of his claim over the currency nor does it govern his standing at later stages of the litigation. *See $148,840.00 in U.S. Currency*, 521 F.3d at 1278.

III.

Because Haussmann has established standing to contest the forfeiture of the seized currency, we reverse the district court's grant of summary judgment to the government and its dismissal of Haussmann's motion to suppress, vacate entry of judgment, and remand for further proceedings.

**CLAY, Circuit Judge, dissenting.** To support his claim for the currency at issue, Alexandre Haussmann relies solely on unexplained and unsupported assertions of ownership. During the discovery process in this forfeiture action, Haussmann refused to answer any questions aimed at discovering how he came about the hundreds of thousands of dollars in currency found in the trunk of his rental vehicle. Haussmann continued to assert that he owned the cash but refused to provide any discovery that would substantiate his claims in that regard; instead, he sought to invoke the Fourth Amendment in order to subvert the discovery process. We have repeatedly affirmed a district court's grant of summary judgment to the government when a claimant attempts to use a constitutional privilege as "a sword . . . to make one's assertions of ownership impervious to attack." *U.S. v. $39,000.00 in U.S. Currency*, 951 F.3d 740, 742 (6th Cir. 2020) (citing *U.S. v. $31,000.00 in U.S. Currency*, 774 F. App'x 288, 291 (6th Cir. 2019)).

For all anyone knows, Haussmann may have been in possession of the cash because he discovered it after it was mistakenly, accidentally, or inadvertently left in the rental car by another person or even the true owner of the currency. During the traffic stop that led to the discovery of the money, Haussmann repeatedly refused to provide authorities with sufficient information to permit them to conclude that Haussmann owned the cash in question.[1] Of course, another possibility is that Haussmann obtained the cash illegally or improperly, and has no legitimate ownership interest in it, and for that reason refused to respond to the government's discovery requests or provide any information that would have confirmed his ownership.

---

[1] After the cash was discovered in the trunk of Haussmann's rental car, Haussmann told officers that he was transporting approximately $800,000 but "declined to claim ownership of the currency," "denied that the money belonged to anyone he knew," and "refused to provide any information about how he obtained the currency." (Verified Compl., R. 1, Page ID #7).

The district court had more than a sufficient basis to conclude that Haussmann failed to satisfy his burden to demonstrate constitutional standing. *See $39,000.00*, 951 F.3d at 742 (noting that the claimant bears the burden of demonstrating that standing exists); *U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 498 (6th Cir. 1998) ("To contest a forfeiture action, an individual customarily bears the burden of demonstrating an interest in the seized item sufficient to satisfy the court of his standing as a claimant"). Haussmann's claim that he has standing to contest the forfeiture of the currency that was found in the trunk of his rental vehicle is predicated on two arguments that he presents to the court, neither of which is legally supportable. He simply insists: (1) that the court accept as true his bald-faced, unverified, and unverifiable assertion that he has an ownership interest the currency—in other words, we are asked to take his word for it; and (2) that he is under no obligation whatsoever to provide appropriate discovery as to the origins of the money, the chain of custody of the money, or his connection to it. In other words, he is arguing, in so many words, that he is under no obligation to offer any evidence or corroboration for his claim that he is the owner of the currency. If we do not accept these two aforesaid propositions, then we may conclude that Haussmann cannot show that he has standing to proceed with this action.

Haussmann argues that explanatory evidence for his naked claim of ownership is unnecessary, relying on a misreading of in-circuit and out-of-circuit cases in similar forfeiture cases. The majority accepts Haussmann's argument that he is not required to provide explanatory evidence to support his claim for ownership at the summary judgment stage. For support, the majority relies on two non-binding cases; but those cases do not support Haussmann's bid for standing.

The first is this Court's unpublished decision in *U.S. v. $31,000.00 in U.S. Currency*, 774 F. App'x 288, 292 (6th Cir. 2019). In *$31,000*, we determined that the claimants had failed to establish standing at the summary judgment stage where they refused to provide discovery to the government to substantiate the naked claims of ownership made in their verified claim. *Id*. The majority latches on to dicta in the opinion indicating that had the verified claim not been struck, the claimants' "silence would have made this a closer case." *Id*. at 292. That dicta, however, does not overcome the case's outcome: the claimants failed to establish standing because they had resisted discovery aimed at substantiating the claimants' bald assertions of ownership.

The second is the Tenth Circuit's decision in *U.S. v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1277 (10th Cir. 2008) (determining that claimant had established standing at summary judgment through verified claim and evidence that he had possessed currency found in his rental car). Not only is this decision not binding on this Circuit, it also expressly contradicts our own Circuit's binding precedent requiring that claims of ownership made at the summary judgment stage be substantiated with some evidence of that ownership. *See U.S. v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 498 (6th Cir. 1998).

The majority opinion reads our decision in *$515,060.42* as requiring only a verified claim and some evidence of a *relationship* to the seized currency. Our caselaw, and the law of nearly every circuit to reach the issue, requires more. 152 F.3d at 498 (requiring claimant to show "facially colorable property interest" to establish standing at summary judgment); *U.S. v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1092 (D.C. Cir. 2017) (finding that claimants had provided sufficient explanatory evidence of ownership by "submitting extensive sworn testimony as evidence of their claim" and noting that claimants would have failed to satisfy standing had they "offered only a bare assertion that they owned the property"); *U.S. v. Phillips*, 883 F.3d 399, 403

(4th Cir. 2018) (collecting cases from several circuits describing adoption of colorable interest test).

At summary judgment, a claimant demonstrates standing by showing a colorable interest in the property. *Id.* For claims of ownership, that means that a verified claim must be supported by some evidence of *ownership*, not merely evidence of *possession* nor, as the majority would allow here, "some form of control" over the seized currency. (Majority Op. at 9); *see Phillips*, 883 F.3d at 403 (citing *$515,060.42* 152 F.3d at 498).

In *$515,060.42*, the evidence of ownership was supplied both by one of the claimants, Jellinik, and by the government's own admissions that the currency at issue was acquired by claimants when they operated bingo games for charity. *See $515,060.42*, 152 F.3d at 499 (noting "in our estimation, Jellinek's claim of ownership, together with its answer to the Government's complaint and the Government's allegations of the nature of Jellinek's involvement with part of the seized currency, are sufficient to establish its standing"). In *$515,060.42*, we found it decisive that the government was already aware of the source of the funds—a gambling operation that claimants argued was a legal and charitable series of bingo games. *Id.* at 500. The claimants and the government in *$515,060.42* both provided evidence that the funds at issue were procured by the claimants through their participation in those bingo games. Here, we only have the fact that the currency was found in the trunk of a transient rental vehicle in Haussmann's temporary custody, not in Haussmann's personal vehicle—with no indication of how the currency got there. Haussmann has rebuffed the discovery requests directed to such subject matter.

The government, in the instant case, suspects that this large quantity of currency, found in the trunk of Haussmann's rented vehicle, may constitute the proceeds of an illegal drug scheme, but has made no admissions nor provided any evidence to suggest that Haussmann is the true

owner of the currency. This difference is pivotal since there is no other evidence in the record that supports Haussmann's claim that he is the owner of the currency, thereby undermining Haussmann's claim that he has established the standing necessary at the summary judgment stage. All we have is Haussmann's unsupported and conclusory statement that he is the owner.

Requiring some explanatory evidence of ownership does not collapse the inquiry into standing into the merits determination in a civil forfeiture proceeding. Particularly where cash is at issue, this Circuit has long required some "explanation or contextual information" to alleviate the "common concern for 'straw man' transfers of property from criminal defendants to third parties and subsequent assertions of ownership by claimants who lack a legal interest in the property subject to forfeiture." *$515,060.42*, 152 F.3d at 498. *$515,060.42* merely held that where the Government was already aware of the source of the currency at issue, its admissions relating to the ownership of the currency could be used to satisfy the claimant's burden to demonstrate standing. *Id.* at 499.

The district court correctly determined that the record is devoid of "any [evidence proving a] claim of ownership to the seized currency[.]" (Op. and Order, R. 49 at Page ID ##517–18). As the Fourth Circuit determined in *Phillips*, the colorable interest test requires more than the "mere assertion" that the claimant owns the currency. 883 F.3d at 405. Where the evidence supplied to the court makes it impossible for the defendant to have earned the currency in a lawful manner, the district court commits no error in determining that there is not sufficient evidence of ownership. *Phillips*, 883 F.3d 399, 405 (noting that district courts can set aside testimony that is "'undermined either by other credible evidence' or by 'physical impossibility.'") (quoting *U.S. v. $17,900.00 in U.S. Currency*, 859 F.3d 1085, 1093 (D.C. Cir. 2017)).

Haussmann objected to interrogatories requesting his tax return information for the past five years, refused to claim ownership at the scene of the traffic stop or provide an explanation of how he acquired the cash, and refused to provide any other evidence that would substantiate his claim that he is the owner of the cash. In the absence of any evidence to support Haussmann's conclusory allegations that he owns all the currency that was seized from his rental vehicle, we are left with no plausible explanation as to how Haussmann acquired the currency. Moreover, the record contains evidence that contradicts Haussmann's verified claim of ownership. After police officers discovered the currency in the trunk of his vehicle, Haussmann "declined to claim ownership of the currency," "denied that the currency belonged to anyone he knew," and "refused to provide any information about how he obtained the currency." (Verified Compl., R. 1, Page ID #7). Accordingly, the district court did not err in holding that Haussmann lacked standing.

Finally, a separate reason exists to affirm the district court's order: the district court's order can be construed as implicitly granting the government's motion to strike the verified claim.[2] The majority argues that the district court failed to follow the proper procedure by not first striking Haussmann's verified claim before granting the government's motion for summary judgment and argues that the district court did not address the government's motion to strike. (Majority Op. at n. 3). While the district court did not explicitly state that it had struck the verified claim, the district court did explicitly write that it was granting the government's motion for summary judgment and to strike Haussmann's verified claim "in its entirety." (Op. and Order, R. 49 at Page ID #518). The district court also correctly cited prior Sixth Circuit decisions where this Court affirmed a

---

[2] At oral argument, the government took the position that the district court had implicitly granted the motion to strike by granting the motion for summary judgment. Counsel for the government, in clarifying his remarks, in response to questions at oral argument, merely noted that he had thought about making such an argument but did not. (Oral Argument at 30:33–30:56). In footnote 3 of the majority's opinion, the majority suggests that the government made a strategic decision to concede the issue by not specifically raising it. The government made no such concession.

district court's grant of summary judgment and striking of the claimant's verified claim, indicating that the district court's intent was to strike the verified claim. (*Id*. at Page ID #517 (first citing *U.S. v. $99,500.00 U.S. Currency*, 795 F. App'x 332 (6th Cir. 2019); then citing *U.S. v. $46,340.00 in U.S. Currency*, 791 F. App'x 596, 597 (6th Cir. 2020); then citing *$31,000.00 in U.S. Currency*, 774 F. App'x at 292; then citing *U.S. v. $68,812.00 in U.S. Currency*, 831 F. App'x 205, 206 (6th Cir. 2020)).

Accordingly, I would interpret the district court's ruling as an implicit grant of the government's motion to strike based on the fact that Haussmann refused to provide supporting evidence for his claim of ownership. *See Parries v. Makino, Inc.*, 148 Fed. App'x. 291, 300 (6th Cir. 2005) (interpreting district court's grant of defendant's motion for summary judgment as an implicit grant of defendant's motion to strike and noting that "[w]hile the better practice would have been to rule explicitly, we cannot say that the district court committed an abuse of discretion in this regard."). I would affirm the district court's implicit grant of the government's motion to strike since the record reveals the district court did not abuse its discretion in striking Haussmann's claim. *See e.g., $39,000.00 in U.S. Currency*, 951 F.3d at 742 (determining that district court did not abuse its discretion in striking verified claim where claimant refused to respond to discovery "aimed at determining the legitimacy of his alleged ownership interests") (citing *$31,000.00*, 774 F. App'x at 291).

For these reasons, I dissent from the majority opinion and would affirm the district court's order granting, "in its entirety," the government's motion for summary judgment and to strike Haussmann's verified claim. (Op. and Order, R. 49 at Page ID #518).