**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-2290**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

JERMAINE LYDELL SANDERS,

        Claimant - Appellant,

   and

$16,761 IN UNITED STATES CURRENCY, seized from Jermaine Lydell Sanders
on 11/16/20 in Mooresville, NC,

        Defendant.

Appeal from the United States District Court for the Western District of North Carolina, at
Statesville. Kenneth D. Bell, District Judge. (5:21-cv-00053-KDB-DCK)

Submitted: November 6, 2023             Decided: November 27, 2023

Before GREGORY and THACKER, Circuit Judges, and KEENAN, Senior Circuit Judge.

Vacated and remanded by unpublished per curiam opinion.

**ON BRIEF:** Maria T. Perry, PERRY LEGAL SERVICES, Durham, North Carolina; John
Thorpe, Scharf-Norton Center for Constitutional Litigation, GOLDWATER INSTITUTE,

Phoenix, Arizona, for Appellant.  Dena J. King, United States Attorney, John Seth Johnson, Assistant United States Attorney, Benjamin Bain-Creed, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jermaine Lydell Sanders appeals from the district court's order denying Sanders' motion to stay and granting summary judgment to the Government in this civil forfeiture proceeding seeking forfeiture of $16,671 in U.S. currency (the "Currency") seized from a rental car. On appeal, Sanders concedes that his appeal from the denial of his motion to stay has been mooted by related state court proceedings. However, he continues to pursue his claims that the district court erred in finding that Sanders lacked standing and granting summary judgment. We vacate and remand for further proceedings.

To establish standing, Sanders must satisfy the "colorable interest" test, which requires a claimant to present "some evidence of ownership" beyond the mere assertion of an ownership interest in the property. *United States v. Phillips,* 883 F.3d 399, 403-04 (4th Cir. 2018). We view the evidence of standing in the light most favorable to him and draw all reasonable inferences in his favor. *Id.* at 405.

Sanders claims an ownership interest in the Currency. Under the colorable interest test, a claimant alleging an ownership interest in seized property must, at a minimum, present some evidence "regarding how the claimant came to possess the property." *Id.* Although courts must refrain from weighing the evidence on summary judgment, courts "may lawfully put aside testimony" that is "undermined either by other credible evidence" or by "physical impossibility." *Id.* (internal quotation marks and citations omitted).

Here, Sanders testified at his deposition that nearly all of the Currency was a gift from his grandmother. While Sanders presented no objective evidence corroborating those facts, he asserts that his claim of ownership, coupled with his possession of the rental car

3

hours before the Currency was seized was sufficient to establish standing. We agree. *See United States v. $148,840 in U.S. Currency,* 521 F.3d 1268, 1277-78 (10th Cir. 2008) (holding that, for purposes of establishing standing, claimant's assertion of ownership of currency is assumed to be true on this record, and such an assertion combined with the fact that currency was seized from the vehicle claimant was driving established constitutional standing); *see also United States v. $133,420 in U.S. Currency,* 672 F.3d 629, 640 (9th Cir. 2012) (noting that assertion of ownership of currency combined with possession is sufficient to establish standing).

Sanders generally explained the source and amount of his grandmother's income. In addition, he testified that he had lived with his mother or grandmother for years and that they paid all of his living expenses. Further, he was seen exiting the rental car after it was parked in a hotel parking lot, and the Currency was later seized from the vehicle, which had not been moved. We find that such is sufficient to establish standing. *See $148,840 in U.S. Currency,* 521 F.3d at 1277 (requiring even "bare assertion" of ownership must be construed in the light most favorable to claimant).[1]

Turning to the merits, this court "review[s] the district court's grant of summary judgment de novo and construe[s] all facts and reasonable inferences therefrom in favor of the nonmoving party." *United States v. McClellan*, 44 F.4th 200, 205 (4th Cir. 2022)

---

[1] The Government avers that much of Sanders' deposition testimony should not be considered given his repeated invocation of the Fifth Amendment privilege to avoid answering relevant questions. However, given that the district court did not strike the testimony, even conclusory claims of ownership were entitled to be viewed in the light most favorable to the claimant. *See* 521 F.3d at 1277.

4

(cleaned up). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The relevant inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (internal quotation marks omitted). In opposing summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Id.* (internal quotation marks omitted).

Civil forfeiture standards are set forth in the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202. *See* 18 U.S.C. § 983. The statute provides that the Government must demonstrate by a preponderance of the evidence that the property sought is subject to forfeiture. 18 U.S.C. § 983(c)(1), (2); *McClellan*, 44 F.4th at 205. "Property is subject to forfeiture if it either facilitated the transportation, sale, receipt, possession, or concealment of a controlled substance, or was intended to do so, or constitutes proceeds of drug-trafficking activities." *McClellan*, 44 F.4th at 205 (citing 21 U.S.C. § 881(a)(6)).

On appeal, Sanders argues that his explanation as to how he obtained the Currency created a material issue of fact as to whether the Currency was connected to drug trafficking. The Government contends that Sanders' story is inherently untrustworthy and contradicted by the evidence. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). However, proving some aspects of Sanders' story false does not prove that the seized cash is drug proceeds. *See McClellan,* 44 F.4th at 210.

Here, Sanders testified that the Currency was mostly gifts from his grandmother and his mother that he had been given over the years and that he saved. He stated that, prior to his grandmother's death in 2021, he lived on money that his grandmother gave him. Approximately six years prior to the hearing, Sanders' grandmother had received a settlement after the death of her husband for over $400,000; she gave Sanders $5000 at that time. She continued to give Sanders money on numerous occasions, the largest gift being approximately $10,000 in 2018. Sanders claimed that he lived with his grandmother prior to 2017 and that, until he had his daughter (around 2017), he had no responsibilities and no expenses, so he was able to save the Currency out of his grandmother's gifts. After 2017, Sanders lived with his mother, and she paid all his expenses. After his grandmother's death, Sanders' mother lived on funds from his grandmother and paid Sanders' expenses out of that money. He had also received a $2000 settlement in 2022 for a car accident and testified to about 4 years of employment.

We find that the undisputed evidence does not show that Sanders' story is untrue or unbelievable as a matter of law. The Government points out that, in Sanders' affidavit of indigency filed in 2020, he averred that he had no income, that he had $1500 in monthly expenses ($1100 rent and $400 food), and that he lived at a different address than his mother. While this evidence certainly raises questions regarding Sanders' credibility, it is

6

unclear how long he lived at a different address and if his mother paid the monthly expenses listed. The Government presents no evidence undermining Sanders' assertions regarding his grandmother's settlement money. Thus, this court should accept as true that Sanders' grandmother received over $400,000 in approximately 2016 and essentially paid for Sanders' and his mother's expenses. As such, Sanders could conceivably have saved the larger gifts from his grandmother, having no need to pay for his expenses. Because Sanders' testimony is not contradicted by record evidence, a material issue of fact exists regarding whether the Currency represented gifts from his grandmother.

The district court held that Sanders refusal to answer questions regarding the money given to him by his grandmother and his failure to provide any documentation permitted summary judgment. However, the court never actually recognized that Sanders alleged that his grandmother had a settlement in excess of $400,000. It is not implausible that nearly half a million dollars could support three people for six years, especially when supplemented by Sanders' own settlement and earnings. Further, while Sanders invoked the Fifth Amendment frequently, he also answered many questions about his grandmother, his mother, and his expenses. Given his testimony that his grandmother and mother, over the course of approximately six years, paid his expenses and also gave him numerous gifts of up to $10,000, Sanders' alleged source of legitimate income could explain why he had $16,761 in cash.

The court also found Sanders' claim that he had no living expenses implausible. However, viewing his testimony in the light most favorable to Sanders, he was not really asserting that he had no living expenses; instead, he claimed that his grandmother and

7

mother paid for his expenses. Moreover, even if Sanders supplemented his gifted income with drug dealing, such is insufficient on its own to show that the entire amount of seized cash was drug proceeds, as a matter of law. *See* 21 U.S.C. § 881(a)(6) (cash only subject to forfeiture if it was exchanged for drugs, traceable to drug dealings, or intended to be used to violate federal drug laws); *United States v. Assorted Jewelry,* 833 F.3d 13, 15 (1st Cir. 2016) (finding evidence that jewelry was found close to controlled substances and that claimant pled guilty to drug conspiracy in sufficient to support summary judgment absent evidence that jewelry could not have been purchased with legitimate funds); *United States v. Sum of $185,336.07,* 731 F.3d 189, 197 (2d Cir. 2013) (requiring Government to provide evidence that *all* of the money seized from a brokerage account constituted proceeds from federal drug crimes). Notably, aside from the fact of Sanders' prior convictions and arrests, the Government presented no evidence regarding the regularity of Sanders' drug dealing or the amounts of money he made from such dealing.

The district court also drew an inference that the possession of unusually large amounts of cash is circumstantial evidence of drug trafficking. However, such does not create an "inescapable inference of criminal activity." *McLellan,* 44 F.4th at 211. Especially, here, where Sanders testified that he received the gifted funds in cash and saved them and that he did not have a bank account. *See Leonard v. Texas,* 580 U.S. 1178 (2017) (noting that groups frequently targeted for forfeiture are often the same groups "more likely to use cash than alternative forms of payment").

Finally, the district court relied upon the positive dog alerts on the cash, car, and Sanders' possessions; the marijuana shake found in the car and his possessions; Sanders'

8

criminal history; and adverse inferences from Sanders' invocation of the Fifth Amendment. Certainly, this evidence supported the conclusion that marijuana was present in the car and that Sanders has a history of drug trafficking. However, even assuming Sanders has not shown an issue of material fact as to whether he was involved with drug trafficking in the rental car, such does not create an inescapable conclusion that the Currency (in whole or part) was drug proceeds. As discussed above, Sanders provided sworn testimony that the Currency was gifts from his grandmother and mother, and he provided details as to where his grandmother obtained the money, as well as descriptions and dates of various gifts. The Government presented no evidence undermining Sanders' allegations that his grandmother received a substantial monetary settlement and used it, in part, to pay Sanders' expenses and gift him money. While a jury would be free to reject Sanders' assertions or determine that, despite Sanders' grandmother's gifts, the Currency was proceeds from drug trafficking, it was inappropriate to reject Sanders' story on summary judgment.

Accordingly, we vacate the district court's order and remand for further proceedings.[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*VACATED AND REMANDED*

---

[2] With regard to the denial of the motion to stay, this portion of the district court's order is also vacated. *See Norfolk Southern Ry Co. v. City of Alexandria,* 608 F.3d 150, 161-62 (4th Cir. 2010) ("The customary practice when a case is rendered moot on appeal is to vacate the moot aspects of the lower court's judgment.").